[No. 63828-4. En Banc.]
Argued June 26, 1996. Decided November 7, 1996.

THE STATE OF WASHINGTON, *Petitioner*, v. EDWARD DEAN BASH, ET AL., *Respondents*.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for petitioner.

*Kenneth W. Raber* and *J. Adam Moore,* for respondents.

MADSEN, J. — Respondents Lawrence E. Delzer and Edward D. Bash were charged by information with violating RCW 16.08.100(3), which provides that the owner of a dog which aggressively attacks and causes severe injury or death of a human being is guilty of a class C felony. The trial court concluded that the statute sets forth a strict liability offense but that a defendant may assert as an affirmative defense that he or she neither knew nor should have known that the dog was a potentially dangerous or dangerous dog. We granted discretionary review and reverse, holding that the statute does not define a strict liability crime, but instead requires that the dog's owner either knew or should have known that the dog was a potentially dangerous or a dangerous dog.

## STATEMENT OF CASE

The State says that it will produce evidence at trial that two pit bulls owned by respondents attacked and killed

Mr. Walt Freser, a seventy-five-year-old man, who was sitting in a wheel chair in his back yard, and that the dogs also seriously injured a neighbor, Mr. Herman Miller, when he tried to rescue Mr. Freser.

Respondents' cases were consolidated for trial. Respondents moved for dismissal of the charges because the State failed to allege any mental element of the crime and it appeared the prosecution would proceed on the basis that RCW 16.08.100(3) defines a strict liability crime. Respondents maintained that RCW 16.08.100(3) does not set forth a strict liability offense, and, if it does, it is unconstitutional. The trial court denied the motion to dismiss. The court ruled that the statute sets forth a strict liability offense. The court was troubled by what it perceived to be due process problems attendant with the strict liability nature of the offense, however, and therefore further ruled that the statute would be unconstitutional unless a judicially imposed defense was available to a defendant charged under the statute. Accordingly, the court, drawing by analogy from the "unwitting possession" defense against the strict liability crime of possession of a controlled substance, concluded that respondents would be entitled to assert the defense that they did not know or reasonably should not have known of the potential dangerousness or dangerousness of either or both of the dogs. Clerk's Papers at 4-6. The court reasoned the burden of proving the defense by a preponderance of the evidence would be on the defendant. The court fashioned a jury instruction to this effect.

The State sought discretionary review by this court of that part of the trial court's order creating a defense. The State's motion was granted. Trial court proceedings are stayed pending this court's decision in the case.

## ANALYSIS

In 1987, the Legislature enacted a number of statutes concerning the ownership of dogs. LAWS OF 1987, ch. 94.

RCW 16.08.100 is one of those statutes. To place the statute in context, an overview of the 1987 legislation is helpful. In general, the 1987 statutes define potentially dangerous and dangerous dogs, set forth requirements regarding ownership of dangerous dogs, and establish criminal liability under several circumstances.

RCW 16.08.070(1) defines

"Potentially dangerous dog" [as] any dog that when unprovoked: (a) Inflicts bites on a human or a domestic animal either on public or private property, or (b) chases or approaches a person upon the streets, sidewalks, or any public grounds in a menacing fashion or apparent attitude of attack, or any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or otherwise to threaten the safety of humans or domestic animals.

RCW 16.08.070(2) defines

"Dangerous dog" [as] any dog that according to the records of the appropriate authority, (a) has inflicted severe injury on a human being without provocation on public or private property, (b) has killed a domestic animal without provocation while off the owner's property, or (c) has been previously found to be potentially dangerous, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals.

" 'Severe injury' means any physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery." RCW 16.08.070(3).

Under RCW 16.08.080, it is unlawful to have an unregistered dangerous dog (with an exception for police dogs). A certificate of registration will be issued upon sufficient evidence of a proper enclosure for the dog and $50,000 in liability insurance covering injuries caused by the dog. RCW 16.08.080. A dangerous dog must be properly restrained and muzzled in accordance with RCW 16.08.090(1) when outside its enclosure. Potentially dangerous dogs are not regulated under RCW 16.08, but instead are to be regulated by local, municipal, and county ordinances. RCW

16.08.090(2). Dogs are not to be declared dangerous if the threat, injury, or damage was sustained by a person who either committed a willful trespass or other tort or crime on the owner's premises, or had tormented, abused, or assaulted the dog. RCW 16.08.090(3).

Finally, in addition to providing for criminal liability under RCW 16.08.100(3), RCW 16.08.100 provides for confiscation of a dangerous dog if it is not registered, the owner has failed to secure liability insurance, the dog is not maintained in a proper enclosure, or the dog is not properly restrained while outside the owner's dwelling or the dog's proper enclosure. In these instances, the owner is guilty of a gross misdemeanor. RCW 16.08.100(1). If a dangerous dog of an owner who has a prior conviction under RCW 16.08 attacks or bites a person or domestic animal, the owner is guilty of a class C felony and the dog must be confiscated and humanely destroyed. RCW 16.08.100(2).

The statutory provision at issue in this case is RCW 16.08.100(3), which provides:

> The owner of any dog that aggressively attacks and causes severe injury or death of any human, whether the dog has previously been declared potentially dangerous or dangerous, shall be guilty of a class C felony punishable in accordance with RCW 9A.20.021. In addition, the dog shall be immediately confiscated by an animal control authority, placed in quarantine for the proper length of time, and thereafter destroyed in an expeditious and humane manner.

Under RCW 9A.20.021(c), a class C felony is punishable by confinement for five years in a state correctional facility, by a fine of $10,000, or both.

The State maintains, and the trial court agreed, that RCW 16.08.100(3) sets forth a strict liability crime, one having no required mental element. Respondents maintain that the statute does have a mental element, or, at the least, it is ambiguous and should be construed as having a mental element requirement.

Respondents correctly argue that the statute is ambiguous, primarily as a result of the clause "whether the dog has previously been declared potentially dangerous or dangerous." RCW 16.08.100(3). This clause can be read two ways. It can be read to mean "whether or not" the dog has previously been declared potentially dangerous or dangerous an owner is criminally liable. This is the way in which the trial court construed the statute. The clause can also be read to mean "whether the dog has previously been declared potentially dangerous or whether the dog has been previously declared dangerous," i.e., one or the other. Under this reading, criminal liability would only arise if the dog had previously been classified as either a "potentially dangerous dog" or a "dangerous dog," in accord with the definitions in RCW 16.08.070.

An ambiguous statute is subject to construction. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). Where a statute is amenable to more than one interpretation, legislative history and other aids to construction may provide guidance in construing the statute to give effect to the intent of the Legislature. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992). The court has frequently looked to final bill reports as part of an inquiry into legislative history. *E.g.*, *State v. Silva-Baltazar*, 125 Wn.2d 472, 479, 886 P.2d 138 (1994).

The final bill report on SSB 5301, the bill enacted as RCW 16.08, provides some background but no clarification to the legislation. The report indicates that while current law then held dog owners liable for injury a person sustained as a result of a dog bite, the dog owners were not required to establish the ability to pay until after an incident occurred. Some owners refused or were unable to pay damages for injuries suffered. Senate Comm. on Judiciary, House Comm. on Judiciary, Final Bill Report, SSB 5301, 49th Legislature (1987). With regard to RCW 16.08.100(3), the report states "The owner of any dog that causes severe injury or death to any human, irrespective

of the dog's previous classification, is guilty of a class C felony and the dog must be quarantined and destroyed." *Id.*; Clerk's Papers at 137.

Unfortunately, the final bill report does not resolve the ambiguity in the statute. It can be read to say that regardless of any, or no, previous classification, criminal liability arises—a reading consistent with the State's position that RCW 16.08.100(3) sets forth a strict liability crime. Alternatively, because the explanation in the final bill report refers to "the dog's previous classification," it can be read to mean that the dog had a previous classification which, under the statutory scheme and the language in RCW 16.08.100(3), would have been as a potentially dangerous dog or a dangerous dog.

Principles of statutory construction may also be applied to resolve an ambiguity. Applicable here is the rule that statutes should be construed so that all of the language used is given effect, and no part is rendered meaningless or superfluous. *Whatcom County*, 128 Wn.2d at 546. If, as the trial court concluded, the "whether" clause means "whether or not" the dog has been declared either potentially dangerous or dangerous, the clause adds nothing to the meaning and is superfluous—if it were eliminated, the statute would mean the same thing. Giving meaning to the clause requires that it be construed as providing that regardless of whether the dog was previously classified as either a potentially dangerous dog or as a dangerous dog (but it was classified as one or the other), criminal liability may arise.

Respondents also urge that in the context of RCW 16.08 as a whole, the 1987 statutes are inconsistent if RCW 16.08.100(3) is read as a "first bite" statute, one which imposes criminal liability without regard to any previous classification of the dog. This court assumes that the Legislature did not intend to create an inconsistency in statutes, and seeks to construe statutes so as to avoid inconsistency. *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 314, 884 P.2d 920 (1994).

Under RCW 16.08.070(2)(a) a dog which inflicts severe injury on a human being is a dangerous dog which must be registered for lawful ownership. Under RCW 16.08.070(2)(c), a dog previously found to be potentially dangerous, which again aggressively attacks a human is a dangerous dog which must be registered. In neither case do the statutes mandate destruction of the dog. However, under RCW 16.08.100(3), the dog must be destroyed. If RCW 16.08.100(3) is read to apply to any dog which aggressively attacks and inflicts severe injury on a human, regardless of any previous classification, it is inconsistent with RCW 16.08.070(2). The statutes would then provide that a dog attacking a human and inflicting severe injury could be registered as a dangerous dog under RCW 16.08.070(2) and .080, but would have to be destroyed under RCW 16.08.100(3).

Perhaps more importantly, under RCW 16.08.070(2)(a), an owner can register as a dangerous dog a dog which has inflicted severe injury on a human being apparently without being subjected to a felony prosecution, while under RCW 16.08.100(3), a dog which aggressively attacks and causes severe injury to a human being is subject to a felony prosecution for a first attack under the State's position and the trial court's construction of the statute. We decline to construe RCW 16.08.100(3) in a manner which would render it inconsistent with other provisions in the statute.

Resolving the ambiguity in the statute as requiring the State to prove the dog was either a potentially dangerous dog or a dangerous dog, however, does not answer the question of whether a mental element is part of the crime established by RCW 16.08.100 because the statutes do not in general contain provisions attributing knowledge about the animal's aggressive or dangerous propensities to the owner, especially with regard to potentially dangerous dogs. Under the statutory scheme, a dog could be either an unregistered dangerous dog or a potentially dangerous dog without the owner's knowledge—the statute does not

expressly tie the classification to notice to the owner except in one instance. That one instance is that a dangerous dog includes one previously found to be potentially dangerous, "*the owner having received notice of such* and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals." RCW 16.08.070(2)(c) (emphasis added). By this provision, it is apparent that the Legislature contemplated that an owner might have a potentially dangerous dog with no notice of that classification. Also, while the definition of "dangerous dog" includes the fact that the records of the appropriate agency reflect the dog's conduct, thus suggesting the owner may have some reason to know of it, the definition of "potentially dangerous dog" does not contain such language. Adding to the uncertainty is the fact that the statutes are not clear about how a dog is "declared" or "classified" as either a "potentially dangerous dog" or a "dangerous dog."

 Where a statute does not specify a mental element, legislative intent may be determined by resort to another body of law generally guiding such an inquiry. Although there is no fixed test, courts have considered several factors in deciding whether a criminal statute provides for a strict liability crime where it does not specify a mental element. Whether a mental element is an essential element of a crime is a matter to be determined by the Legislature. *State v. Cleppe*, 96 Wn.2d 373, 378, 635 P.2d 435 (1981), *cert. denied*, 456 U.S. 1006 (1982) (citing *State v. Henker*, 50 Wn.2d 809, 812, 314 P.2d 645 (1957)); *see also Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 1796-97, 128 L. Ed. 2d 608 (1994). The Legislature may create strict liability crimes. *State v. Rivas*, 126 Wn.2d 443, 452, 896 P.2d 57 (1995) (citing *Cleppe*, 96 Wn.2d at 380; *State v. Stroh*, 91 Wn.2d 580, 583-84, 588 P.2d 1182, 8 A.L.R.4th 760 (1979), and *Morissette v. United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952)).

Thus, deciding whether a statute sets forth a strict liability crime is a statutory construction question aimed at

ascertaining legislative intent. The inquiry begins with the statute's language and legislative history. The "whether" clause in RCW 16.08.100(3) indicates legislative intent that a strict liability crime was not intended, on the ground that the dog must have exhibited some aggressive or dangerous conduct giving the owner indication that the animal needed to be controlled or it might cause harm. Further, use of the word "declared" in that clause suggests the Legislature envisioned some notice of the dog's status.

In the context of the statutes as a whole, the Legislature was seeking to identify dogs likely to pose a significant danger to people and to require owners to take precautions reducing that danger. It is therefore reasonable to conclude that the Legislature did not intend to impose criminal liability if the owner were unaware of the dog's aggressiveness or dangerous propensities.

Moreover, RCW 16.08.040, enacted in 1941, provides for strict civil liability of an owner for damages resulting from a dog bite "regardless of the former viciousness of such dog or the owner's knowledge of such viciousness." The Legislature clearly knew how to eliminate any knowledge requirement as it expressly did in RCW 16.08.040, and could similarly have done so in RCW 16.08.100(3) if that had been the Legislature's intent.

In *Staples*, the United States Supreme Court identified several considerations which bear upon legislative intent to impose strict liability: (1) a statute's silence on a mental element is not dispositive of legislative intent; the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) and the harshness of the penalty. Other considerations include: (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts;

(7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected. 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986). Finally, criminal offenses with no requirement of a mental element have a "generally disfavored status." *E.g., Liparota v. United States,* 471 U.S. 419, 426, 105 S. Ct. 2084, 85 L. Ed. 2d 434 (1985) (quoting *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978)); *United States v. Nguyen,* 73 F.3d 887, 890-91 (9th Cir. 1995).

For several centuries, common law crimes were defined to require both an actus reus, or guilty conduct, and a mens rea, the culpable state of mind, whether intent, knowledge, recklessness, or, more rarely, negligence. 1 LAFAVE & SCOTT § 3.8, at 340; *see Morissette,* 342 U.S. at 251 (common law crimes "generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand"); *State v. Smith,* 17 Wn. App. 231, 234, 562 P.2d 659 (1977) (at common law, general rule was that intent or scienter was an element of every crime), *review denied,* 89 Wn.2d 1022 (1978). "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Morissette,* 342 U.S. at 250.

More modernly, statutes were enacted defining criminal acts, and courts concluded that common law crimes when codified continued to require intent or guilty knowledge, even if the statutes were silent on the matter. *Id.* at 252. An associated principle is that crimes which involve moral turpitude are malum in se and have been held to require a mental element, some level of "guilty knowledge," even

if the statute does not specify that element. *State v. Turner*, 78 Wn.2d 276, 280, 474 P.2d 91, 41 A.L.R.3d 493 (1970). In contrast, statutory crimes which are mala prohibita, if properly enacted within the police power, are often upheld without proof of an evil intent, and even without any mental element at all. *Id.* at 280. Such crimes often fall within a category of crimes called "public welfare" or "regulatory" offenses, such as those involving "pure food and drugs, labeling, weights and measures, building, plumbing and electrical codes, fire protection, air and water pollution, sanitation, highway safety and numerous other areas[.]" *Id.* at 280; *see Staples*, 114 S. Ct. at 1797-98. Many of the public welfare offenses "are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize." *Morissette*, 342 U.S. at 255-56.

Respondents argue that the goal of RCW 16.08.100(3) is to prevent aggressive dog attacks causing injury or death in humans, and that such occurrences are bad in and of themselves. Respondents urge that the crime is thus a malum in se crime requiring scienter, and is unlike regulatory crimes such as erecting a building without a permit. The State maintains, to the contrary, that RCW 16.08.100(3) establishes a malum prohibitum offense which is a strict liability crime.

In identifying the typical "public welfare offense," the nature of the thing regulated is often a crucial inquiry. Items within such regulation have included "potentially harmful or injurious items[,]" and "dangerous or deleterious devices or products or obnoxious waste materials[.]" *Staples*, 114 S. Ct. at 1798 (quoting *United States v. International Minerals & Chem. Corp.*, 402 U.S. 558, 564-65, 91 S. Ct. 1697, 29 L. Ed. 2d 178 (1971)). The Court has reasoned, though, that even statutes regulating dangerous

items will not be treated as defining a public welfare offense where strict liability would criminalize a broad range of apparently innocent behavior. *Id.* at 1798-1800. The Court said in *Staples*, involving a statute criminalizing possession of unregistered machine-guns, that items or devices, even if dangerous, must be of a nature to "alert individuals to the likelihood of strict regulation." *Id.* at 1800. The Court reasoned that "despite their potential for harm, guns generally can be owned in perfect innocence." *Id.* at 1800. The Court observed that virtually any semi-automatic weapon may be converted, by internal modification, or in some cases by wear and tear, into a machine-gun within the meaning of the statute at issue, and give no visible external indication it is fully automatic. *Id.* at 1802. The Court held that under the statute criminalizing possession of an unregistered machine-gun, the Government had to prove beyond a reasonable doubt that the defendant knew that the gun possessed had characteristics bringing it within the statutory definition of a machine-gun, and rejected the Government's argument that the statute established a strict liability public welfare offense.

This notion that a dangerous or destructive item which is regulated must be such as to put the owner on notice of the likelihood of regulation in order to find a strict liability crime favors respondents in this case. The analogy would be that as a general proposition, ownership of dogs is "so commonplace" (*see Staples*, 114 S. Ct. at 1800), and often occurs with such "perfect innocence" (*see Staples*, 114 S. Ct. at 1800), that dog owners would not be put sufficiently on notice of the likelihood of regulation to an extent to justify interpreting RCW 16.08.100(3) as not requiring a mental element (*compare Staples*, 114 S. Ct. at 1800).

The Court in *Staples* also reasoned that the harshness of the penalty is a relevant consideration in deciding whether Congress intended a strict liability crime. *Staples*, 114 S. Ct. at 1802-04; *see* 1 LaFave & Scott § 3.8, at 340-41, 343. "Other things being equal, the greater the pos-

sible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault." 1 LaFave & Scott § 3.8, at 343 (statute defining crime of taking contraband into state prison without specifying mental element not a strict liability crime; court stresses crime punishable by 3 to 5 years imprisonment) (citing, among other cases, *State v. Strong*, 294 N.W.2d 319 (Minn. 1980)); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994) (mental element requirement presumed where violations of statute criminalizing transporting or receiving visual depictions of minors engaging in sexually explicit conduct punishable by up to 10 years' imprisonment). The Court in *Staples* stopped short of saying that punishing a crime as a felony was incompatible with the theory of the public welfare offense, but strongly hinted in that direction and then concluded that "absent a clear statement from Congress that mens rea is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea." *Staples*, 114 S. Ct. at 1804.

The crime defined in RCW 16.08.100(3) is a class C felony, punishable by 5 years' imprisonment, or a $10,000 fine, or both, and the harshness of this penalty may indicate the Legislature did not intend a strict liability crime in RCW 16.08.100(3). However, it should also be noted that this court has found a statute to state a strict liability offense where the conduct was punishable as a felony. *State v. Lindberg*, 125 Wash. 51, 215 P. 41 (1923) (state banking act punishing bank director for borrowing from bank; one to five-year indeterminate sentence imposed). LaFave and Scott observe, though, that generally in cases where a strict liability statute has been found even with a harsh penalty, other factors in the cases pointed toward strict liability. 1 LaFave & Scott § 3.8, at 345.

The seriousness of the possible harm to the public argu-

ably weighs in favor of a strict liability offense. "Other things being equal, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault, and vice versa." LaFave & Scott § 3.8, at 343. Animals which attack humans are a serious problem and the history recounted in the final bill report discussed above demonstrates legislative concern for accountability. That history expressly concerns financial responsibility, a matter addressed in the legislation making $50,000 in liability insurance mandatory as a condition of owning a dangerous dog. But criminal liability was undoubtedly thought of by the Legislature as having a deterrent effect which would protect the public from unrestrained and uncontrolled dogs. Whether a strict liability standard would accomplish the goal of deterrence is doubtful, however, because unless the owner knows or reasonably should know of the dog's dangerous propensities, it is unlikely that the owner would think it necessary to use extraordinary care in controlling the dog.

The record does not offer any information regarding the difficulty for the prosecution in proving fault nor does it offer whether the burden would be so time-consuming that imposing strict liability would be justified. Likewise, the record is silent as to the number of prosecutions which can be expected under the RCW 16.08.100(3).

On balance, the statutory scheme as a whole favors reading the statute as not setting forth a strict liability crime. At the least, as respondents argue, the inclusion of the "whether" clause in the statute does not clearly eliminate scienter, and given the nature of the crime as a felony and the harshness of the potential punishment, legislative intent to dispense with a mental element should be clear before the court concludes the statute defines a strict liability crime. Actual knowledge of a dog's dangerous propensities, or a "should have known" standard, like a negligence standard, is consistent with the Legislature's apparent purpose in enacting the 1987 statutes in RCW 16.08 regarding regulation and control of aggressive and dangerous dogs.

Cases cited by the State are not to the contrary. In its motion for discretionary review, the State relied upon *State v. Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992) and *State v. Rivas*, 126 Wn.2d 443, 896 P.2d 57 (1995) as examples of areas of the criminal law where strict liability has been upheld. *Coria* involved statutes imposing enhanced penalties for drug dealing within 1,000 feet of a school bus stop. The court held that the statute constitutionally imposed the enhanced penalties regardless of the drug dealers' knowledge whether he was in a drug-free zone. *Coria* is unlike the present case in an important regard, however. While dog ownership is wide-spread and generally innocent behavior, selling drugs is not.

*Rivas* is also unlike the present case. *Rivas* involved the question whether under the vehicular homicide by intoxication statute there was a required causal connection between intoxication and the victim's death. *Rivas*, 126 Wn.2d at 452-53. The crime there involved consumption of alcohol to a state of intoxication, and the driving of a motor vehicle. Courts have recognized that alcohol is an inherently dangerous substance producing harmful secondary effects such as drunk driving, and accordingly alcohol-related offenses may be strict liability offenses. *State v. Larson*, 653 So. 2d 1158 (La. 1995). Moreover, the conduct in vehicular homicide by intoxication requires the choice to consume alcohol and drive, an unquestionably dangerous combination. In general, owning a dog is not fraught with the same danger potential.

We reverse the order of the trial court and hold that criminal liability arises under RCW 16.08.100(3) only if the dog which severely injures or kills a human being previously fell within the definition of either a potentially dangerous or dangerous dog and that the State must prove beyond a reasonable doubt that the defendant either knew or should have known that his or her dog was a potentially dangerous or dangerous dog as an element of the crime.

GUY, ALEXANDER, and SANDERS, JJ., concur.

DURHAM, C.J. (concurring) — Under RCW 16.08.100(3),

the owner of a dog that attacks and severely injures or kills a human being may be guilty of a felony if that dog has "previously been declared potentially dangerous or dangerous." Although the statute is not well drafted, its meaning is clear. The majority properly refuses the State's invitation to construe the statute in a manner that renders the quoted passage superfluous.

Unfortunately, the majority then proceeds to ignore the plain meaning of the same passage. This leads the majority to an analysis of a notice or knowledge issue that is not presented by the facts of this case. The majority's concern for owners who may be unaware of their dogs' dangerous propensities is misplaced. Contrary to the majority's paraphrasing, RCW 16.08.100(3) does not apply to the owners of dogs that "previously fell within the definition of either a potentially dangerous or dangerous dog." Majority at 611. The statute applies only to the owners of dogs that have *"previously been declared"* to meet either of those definitions.[1] Strict criminal liability for harm caused by such animals is entirely appropriate.

As the majority points out, RCW 16.08.100(3) does not explain how, as a practical matter, particular dogs are to be "declared" to be "potentially dangerous" or "dangerous."[2] But the statute does not exist in a vacuum. Chapter 16.08 clearly contemplates local administrative regulation and enforcement. The definition of a "dangerous dog" is based on the records of local animal control authorities. RCW 16.08.070(2). "Dangerous" dogs must be registered with local authorities. RCW 16.08.080. Liability insurance, proper enclosures, and warning signs are all prerequisites to legal ownership of such dogs. RCW 16.08.080(2). Failure to comply with these requirements for "dangerous" dogs is a gross misdemeanor. RCW 16.08.100(1). Local govern-

---

[1] RCW 16.08.070(1),(2) defines "potentially dangerous" and "dangerous" dogs.

[2] "[T]he statutes are not clear about how a dog is 'declared' or 'classified' as either a 'potentially dangerous dog' or a 'dangerous dog.'" Majority at 604. We are concerned with the meaning of the term "declared" as it is used in RCW 16.08.100(3). The term "classified" does not appear anywhere in RCW Ch. 16.08.

ments may further regulate "potentially dangerous" dogs. RCW 16.08.090(2). These provisions are not self executing. They must be implemented and enforced by local animal control authorities.

The Yakima County Code creates a dog control department with the administrative authority to declare dogs to be "potentially dangerous" or "dangerous" for purposes of RCW Ch. 16.08. Yakima County Code 8.36.040(b)(1). Unless Yakima County animal control authorities have previously declared Respondents' dogs to be "potentially dangerous" or "dangerous," Respondents cannot be charged with a felony under RCW 16.08.100(3). Because Informations filed against each Respondent (Clerk's Papers at 33-34 (Bash); 166-67 (Delzer)) do not even allege that such declarations have been made, the charges against Respondents must be dismissed. This determination should have been dispositive of this appeal.

The majority's failure to acknowledge the plain meaning of RCW 16.08.100(3) leads the majority to the questionable assumption that dog owners may become liable under the statute without prior knowledge of their dogs' dangerous propensities. This assumption leads to the majority's unnecessary conclusion that RCW 16.08.100(3) does not define a strict liability offense. Contrary to the majority's analysis, this statute does not criminalize a broad range of apparently innocent behavior. The statute applies only to the owners of dogs that, based on prior aggressive behavior, have been administratively declared "potentially dangerous" or "dangerous." Only those persons who choose to continue to own and take legal responsibility for such an animal may become liable under the statute. The seriousness of the potential harm fully justifies holding the owners of such dogs criminally liable for any failure to prevent such dogs from harming a human being.

The additional element of actual or constructive knowledge is probably unnecessary. An administrative declaration that a particular dog is "potentially dangerous" or "dangerous" would presumably include notice of that fact

to the dog's owner. If local animal control authorities declared a dog to be "potentially dangerous" or "dangerous" without notice to the owner, any subsequent prosecution under RCW 16.08.100(3) could be challenged on procedural due process grounds.[3] A subsequent owner who was not aware that a dog had previously been declared "potentially dangerous" or "dangerous" might make the same argument advanced by Respondents here. I find it unnecessary to reach this issue because the Informations do not allege that these dogs were ever declared to be "potentially dangerous" or "dangerous" for purposes of RCW 16.08.100(3).

JOHNSON and TALMADGE, JJ., concur with DURHAM, C.J.

DOLLIVER, J. (dissenting) — I dissent. Regardless of the elaborate and sometimes tendentious argument of the majority, I believe the statute is definitely a strict liability statute. The majority attempts to convert this into a "second bite" statute, but Mr. Walt Freser was *killed* by the attack of the dogs. Surely the majority did not wish to make this a "second death" statute.

We may have serious objections to the method which the Legislature chose to resolve this problem, but we are not platonic guardians. If we were to take on every instance of disagreement with a legislature that drafts its statutes in a manner unpleasing to us, we would have a full-time job. It is not the prerogative of this court to pass upon the desirability of a statute. The Legislature has perceived a problem, written a statute, and now it must live with the consequences. It is not our duty to do otherwise.

---

[3]*See State v. Whitney*, 78 Wn. App. 506, 897 P.2d 374 (prosecution for driving with suspended driver's license requires a showing that driver was provided with notice of suspension and an opportunity to be heard), *review denied*, 128 Wn.2d 1003 (1995).

SMITH, J., concurs with DOLLIVER, J.