**FILED**
**FEBRUARY 6, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34438-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GLEN H. PINKHAM, | ) | PUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

KORSMO, J. — This court granted discretionary review of this district court prosecution to determine if the crime of unlawful possession of a loaded rifle in a vehicle requires a mental state. We conclude that the legislature did not impose a mental state and that this safety regulation does not require one. Accordingly, we affirm.

FACTS

Petitioner Glen Pinkham was charged in the Yakima County District Court with one count of possession of a loaded rifle in a vehicle in violation of RCW 77.15.460(1) after being seen field dressing an elk by a wildlife officer. The complaint charging the crime alleged that he "knowingly" committed the offense.

No. 34438-0-III
*State v. Pinkham*

The case proceeded to jury trial; the officer was the sole witness. Despite the knowledge element alleged in the charging document, the court, over defense objection, gave the State's proposed "to convict" instruction that did not include a knowledge element. The jury convicted as charged. The superior court affirmed on appeal.

This court granted discretionary review to resolve the mental state question.[1] A panel considered the matter without oral argument.

ANALYSIS

The sole question presented by this appeal is one that was not discussed or resolved in *State v. Olney*, 117 Wn. App. 524, 72 P.3d 235 (2003), *review denied*, 151 Wn.2d 1004 (2004).[2] Did the legislature intend that prosecution of the offense of possessing a loaded weapon in a vehicle require proof of a particular mental state, such as knowledge?

The statute provides:

A person is guilty of unlawful possession of a loaded rifle or shotgun in a motor vehicle, as defined in RCW 46.04.320 . . . if:
    (a) The person carries, transports, conveys, possesses, or controls a rifle or shotgun in a motor vehicle . . . except as allowed by department rule; and

_____

[1] Our commissioner declined to review Mr. Pinkham's challenge to the wildlife agent's authority to investigate his hunting activities. *See State v. Olney*, 117 Wn. App. 524, 72 P.3d 235 (2003), *review denied*, 151 Wn.2d 1004 (2004).
[2] Petitioner also requests that he not be assessed appellate costs should he fail to prevail. Since the State has indicated it will not be seeking costs, the request is moot and will not be addressed.

2

       (b) The rifle or shotgun contains shells or cartridges in the magazine or chamber.

RCW 77.15.460(1).[3] This offense is a misdemeanor. RCW 77.15.460(3). It was enacted in 1998. LAWS OF 1998, ch. 190, § 28.

Like the statute itself, legislative history materials are silent on the question of whether a mental state was intended. Petitioner argues that the crime should not be treated as a strict liability offense, likening the situation to *State v. Anderson*, 141 Wn.2d 357, 5 P.3d 1247 (2000). There, our court determined that the crime of unlawful possession of a firearm in the second degree required imputation of a knowledge element that was not stated in the statute.[4]

It is the job of the legislature to define crimes. *State v. Feilen*, 70 Wash. 65, 70, 126 P. 75 (1912) (legislature has "the inherent power to prohibit and punish any act as a crime" (internal quotation marks omitted)); *State v. Danis*, 64 Wn. App. 814, 820, 826 P.2d 1096 (1992) ("The Legislature has extremely broad, almost plenary authority to define crimes."). Generally, the statute must state the essential elements of a crime. *State v. Wadsworth*, 139 Wn.2d 724, 734, 991 P.2d 80 (2000).

---

[3] This statute replaced an earlier, similar provision. *See* former RCW 77.16.250 (1955) (unlawful "to carry, transport or convey, or to have in his possession or under his control in any . . . vehicle . . . any shotgun or rifle containing shells or cartridges therein"). Our research has not uncovered any case construing the former statute.

[4] The statute made it a crime to own, possess, or control a firearm after previously having been convicted of a felony other than a "serious offense." Former RCW 9.41.040(1)(b) (1995); *see Anderson*, 141 Wn.2d at 360.

The legislature is entitled to enact strict liability offenses. *State v. Rivas*, 126 Wn.2d 443, 452, 896 P.2d 57 (1995). Nonetheless, the courts will read mental states into criminal legislation if they believe the legislature intended a mental state or the common law requires one. *State v. Bash*, 130 Wn.2d 594, 604-07, 925 P.2d 978 (1996). Thus, review of this issue requires consideration of the text of the statute and review of legislative history. *Id.* at 604-05; *Anderson*, 141 Wn.2d at 361.

As noted previously, the text of the statute does not provide for a mental state and there is no legislative history for this offense or the predecessor offense that discusses this topic. In such instances,

> the United States Supreme Court identified several considerations which bear upon legislative intent to impose strict liability: (1) a statute's silence on a mental element is not dispositive of legislative intent; the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) and the harshness of the penalty. Other considerations include: (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected.

*Bash*, 130 Wn.2d at 605-06 (quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341 (1986)). A reviewing court balances these various factors in reaching its assessment of legislative intent. *Id.* at 610.

We think that the balance weighs in favor of a strict liability reading of the statute. While RCW 77.15.460 does not contain a mental element, several accompanying provisions of that chapter, enacted at the same time as § 460 by Laws of 1998, ch. 190, do contain mental elements. *See* RCW 77.15.250 ("knowingly" unlawful release of fish or wildlife); RCW 77.15.265 (unlawful possession if actor "knows" wildlife was taken unlawfully); RCW 77.15.290 ("knowingly" engaging in unlawful transportation of fish or wildlife); RCW 77.15.310 ("knowingly" fails to use or maintain fish guard). Later additions to the chapter similarly describe some crimes with mental states and others without. *See, e.g.*, RCW 77.15.790 ("negligently" feed or attract wild carnivores); RCW 77.15.792 ("intentionally" feed or attract wild carnivores). The legislature clearly knew how to create crimes with mental states and without mental states and it enacted both varieties of offenses at the same time in the 1998 legislation. LAWS OF 1998, ch. 190. This first factor favors treating § 460 as a strict liability offense.

The second factor is whether this is a "public welfare offense." The statute is located in the fish and wildlife title of the Revised Code of Washington. It appears designed both to limit hunting from automobiles and to protect against the accidental discharge of a weapon in an automobile, something that could harm either the vehicle's occupants or others in the vicinity. *E.g.*, *Transamerica Ins. Grp. v. United Pac. Ins. Co.*, 92 Wn.2d 21, 22-23, 593 P.2d 156 (1979) (passenger's loaded rifle discharged when being removed from truck's gun rack, striking driver); *Heilman v. Wentworth*, 18 Wn.

5

App. 751, 752-53, 571 P.2d 963 (1977) (driver's shotgun slipped and accidentally discharged when truck accelerated, striking passenger). The harm to others that the legislation seeks to prevent would not be mitigated by the fact that it may not have been intended. This regulation is properly characterized as a public welfare offense. This factor, too, favors a strict liability reading of the statute.

The third factor is whether or not a strict reading of the statute would "encompass seemingly entirely innocent conduct." Again, we believe this factor favors strict liability. Carrying a loaded weapon in a moving vehicle is dangerous, not innocent, behavior. The regulation promotes safe gun handling activity and does not limit gun ownership. Carrying a loaded rifle in a vehicle is not "entirely innocent conduct."

The fourth factor is the harshness of the penalty. This offense is a simple misdemeanor, punishable by up to 90 days in jail and/or a fine of $1,000. RCW 9A.20.020(3); RCW 77.15.460(3). Unlike the felony provision at issue in *Anderson*, the punishment for this offense is the most lenient recognized in our general criminal law. This fact ameliorates the harsh nature of a strict liability offense and, on balance, favors that reading of the statute.

The fifth factor is the seriousness of the harm to the public. We believe this factor, too, favors treating this as a strict liability offense. The harm to a bystander is the same whether or not the owner remembered if his rifle was loaded when he put it in his vehicle. The legislature can legitimately determine that public safety is not enhanced by only

punishing those who knowingly carried a loaded weapon in a vehicle instead of those who ignorantly do so.

The sixth factor is the ease or difficulty of the defendant's ability to ascertain the true facts of the incident. Although we can envision fact patterns where a loaded rifle might be placed in a driver's vehicle without his knowledge—a fact pattern that could be addressed with an unwitting possession instruction—in most instances the rifle owner is in the superior position to know whether the weapon is loaded and where it is located. In the typical situation, this factor supports a strict liability reading of the statute.

The seventh factor is whether strict liability would relieve the government of a difficult burden of proof in an area that it is attempting to stamp out harmful conduct. Although the knowledge element often would be difficult to prove since the defendant is the best source of that information, absent evidence of stated legislative purpose to *eliminate* this specific harmful conduct, the seventh factor weighs against imposition of strict liability.

The final factor is the number of prosecutions that might be expected. No numbers have been supplied concerning the number of charges filed under this statute, but it does not appear to be a significant number given the relative dearth of discussion in our case law. This factor does not appear to weigh on either side of the issue.

On balance, these factors weigh in favor of treating this safety regulation as a strict liability offense. There are limited circumstances where hunting from a vehicle is even

7

permitted and no circumstances have been identified that would require that a loaded

weapon be kept in the vehicle to facilitate hunting. The harm of an accidental discharge

justifies the legislative prohibition on loaded rifles or shotguns in a vehicle. There is no

need to impute a mental state to protect innocent behavior.

While our consideration of the factors cited in *Bash* leads to the conclusion that

the legislature intended to impose strict liability, an even earlier *Anderson* case involving

a similar statute also supports this result. *State v. Anderson*, 54 Wn. App. 384, 773 P.2d

882 (1989). At issue in that pre-*Bash* decision was RCW 9.41.050, the statute that

prohibits carrying a loaded pistol in a vehicle unless the owner had a concealed weapons

permit and was present.[5] This court declined to read a knowledge element into the

statute, relying on out-of-state authorities. In particular, citing a California decision that

considered the same United States Supreme Court authorities *Bash* would later consider,

this court recognized that the primary purpose of the statute was regulation rather than

punishment and constituted a matter of public health and safety. *Id.* at 386 (citing *People

v. Dillard*, 154 Cal. App. 3d 261, 265, 201 Cal. Rptr. 136 (1984).[6]

---

[5] "A person shall not carry or place a loaded pistol in any vehicle unless the person has a license to carry a concealed pistol." RCW 9.41.050(2)(a).

[6] The California court went on to describe its loaded pistol in a car statute as "a quintessential public welfare statute which embraces a legislative judgment that in the interest of the larger good, the burden of acting at hazard is placed upon a person who, albeit innocent of criminal intent, is in a position to avert the public danger." *Dillard*, 154 Cal. App. 2d at 266 (quoted in *Anderson*, 54 Wn. App. at 387).

It would be incongruous to hold that a knowledge element is required when a hunting weapon is placed in a vehicle, but no such element is necessary when placing a loaded pistol in the vehicle. We conclude that our construction of that statute in the first *Anderson* case as a strict liability offense is consistent with our construction of the loaded rifle statute. Both operate as public welfare regulations for which the legislature did not intend to include a mental state.

The judgment of the district court is affirmed.

Korsmo, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

9