IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JACOB RYAN HELMS,

Appellant.

No. 86857-8-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Jacob Helms was convicted of assault in the second degree with a deadly weapon and a separate gross misdemeanor charge of possession of a dangerous weapon, following a jury trial. Helms alleges that prosecutorial misconduct deprived him of a fair trial, and the trial court imposed custody conditions that were not crime-related and legal financial obligations that should be stricken due to his indigency. He separately challenges the sufficiency of the charging document and the constitutionality of the statute criminalizing possession of a dangerous weapon. Helms fails to demonstrate error on all but his challenge to the legal financial obligations. Accordingly, we affirm in part, reverse in part, and remand for correction of his judgment and sentence.

FACTS

Jacob Helms and Anatoly "Tony" Berezhnoy were involved in an altercation in Vancouver on the night of August 18, 2022. The impetus of the altercation is disputed between the parties. Berezhnoy claimed that Helms struck him from

behind without warning. Helms later admitted that he struck Berezhnoy in the back of the head with metal knuckles, but asserted that he did so only in self-defense. The two were grappling on the sidewalk when officers who were in the area responded quickly, and ultimately placed both Berezhnoy and Helms into handcuffs to determine what had occurred. Helms was booked into the local jail that night and the State filed charges of assault in the second degree with a deadly weapon and possession of a dangerous weapon, a gross misdemeanor. The case proceeded to a jury trial and Berezhnoy, his wife, Oksana Berezhnoy, their friend Olga Dernovaya, and the responding officers testified for the State. Helms testified in his own defense. The jury convicted Helms as charged and the court sentenced him to 17 months in prison, followed by 12 months of community custody supervision by the Department of Corrections (DOC).

Helms timely appealed.

ANALYSIS

I.   Prosecutorial Misconduct

Helms avers that the prosecutor engaged in "pervasive" misconduct by referring to Berezhnoy as the "victim" several times during trial. In support of this assignment of error, Helms cites six times that the prosecutor used the word to describe Berezhnoy and offers an assortment of out-of-state cases that address the use of the word "victim." However, he presents no analogous authority from Washington courts beyond the basic rules governing prosecutorial misconduct. In response, the State provides an extensive footnote rebutting Helms' characterization of the out-of-state cases and avers the actions of the prosecutor

here were neither flagrant nor ill intentioned. Given that foreign cases offer only persuasive authority, and our state has robust law governing prosecutorial misconduct, Washington jurisprudence is sufficient for us to conclude that Helms' right to a fair trial was not impinged by the prosecutor's conduct.

A defendant who makes a timely objection to prosecutorial misconduct must show that the conduct was "'both improper and prejudicial in the context of the entire trial.'" *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022) (internal quotation marks omitted) (quoting *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)). If the defense does not timely object, we apply a heightened prejudice standard; the defendant must demonstrate the improper and prejudicial conduct was "'so flagrant and ill intentioned that an instruction would not have cured the prejudice.'" *Loughbom*, 196 Wn.2d at 70 (internal quotation marks omitted) (quoting *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976 (2015)). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (internal quotation marks omitted) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

The parties agreed that Helms struck Berezhnoy with metal knuckles; the reason why was the sole disputed fact. During direct examination, Vancouver Police Officer Shane Weldon referred to Berezhnoy as "the victim" when he

described responding to the scene of the altercation.   The following exchange occurred:

> [STATE:] Okay. So as you approached the location of the yelling, what did you observe?
>
> [WELDON:] So when I got there, Schoolcraft and Harris got there a few seconds before I did, so when I got there I saw them in the bushes with the [d]efendant. And I saw Tony, the victim, yelling and kind of being restrained by his two acquaintances.
>
> [STATE:] And was the victim—so Anatoly Berezhnoy, is that the victim you're referring to?
>
> [WELDON:] Yeah, sorry.

Helms did not object any of the times this word was used during the State's examination of Weldon.   The remaining four uses of the word victim occurred during the State's closing argument.   As the prosecutor walked through the evidence for the jury, she said,

> So you heard three witnesses, two witnesses and the victim, that describe that on August 18th, 2022, about 11:00, 11:30, Tony, Olga, and Oksana were walking from the waterfront to Downtown Vancouver to get a drink and go get some dinner.
> . . . .
> The [d]efendant in this case was wearing metal knuckles and he struck the victim in the back of the head.  No matter which story, you did hear two today, no matter which one, he did admit he struck the victim in the back of the head wearing metal knuckles.

The prosecutor later argued, "The State has proved beyond a reasonable doubt through the testimony of the victim, the testimony of the witnesses and the officers that on August 18th, 2022, the [d]efendant, Jacob Helms, assaulted Tony Berezhnoy both with a dangerous weapon and he recklessly inflicted substantial bodily harm."   Helms' attorney did not object to any use of the word victim during

closing argument. Accordingly, we review his allegation of prosecutorial misconduct under the heightened prejudice standard.

As a preliminary matter, while the State appropriately concedes in briefing that use of the word "victim" can be improper, depending on context, using the word "victim" six times during a trial consisting of testimony from five witnesses does not constitute "pervasive" use. This is particularly true when four of the challenged instances occurred during closing argument when the State holds significant latitude to argue its theory of the case. More critically, the manner by which this word was used does not establish misconduct by the State. As the State points out in briefing, Weldon was the first to use the term to describe Berezhnoy, and the two times the prosecutor said victim during the presentation of evidence appeared to be in an attempt to clarify the officer's testimony. When the prosecutor described Berezhnoy as a victim in summation, she was arguing to the jurors her position that she had proved the State's case beyond a reasonable doubt. "In closing argument the prosecuting attorney has wide latitude to argue reasonable inferences from the evidence." *Thorgerson*, 172 Wn.2d at 448. The challenged statements do not constitute misconduct.

Finally, Helms fails to provide any compelling reason as to why any potential prejudice from the description of Berezhnoy as a victim could not have been cured by instruction from the judge. Courts routinely correct language used by parties at trial and "[j]urors are presumed to follow the court's instructions." *State v. Weaver*, 198 Wn.2d 459, 467, 496 P.3d 1183 (2021). Helms does not carry his burden to establish entitlement to relief on this assignment of error.

II.     Sufficiency of the Charging Document

Helms next asserts that the charging document was insufficient as it failed to put him on notice of all essential elements of the crimes the State accused him of committing.  The defendant's right to hear the charges against them is enshrined in the federal constitution and the state constitution.  The accused has a right "to be informed of the nature and the cause of the accusation."  U.S. CONST. amend. VI.  And "to demand the nature and cause of the accusation against [them]."  WASH. CONST. art. I, § 22.  Thus, the "State must include all essential elements of an alleged crime in the information."  *State v. Kosewicz*, 174 Wn.2d 683, 691, 278 P.3d 184 (2021).  This rule is intended to "sufficiently apprise the defendant of the charges against them so [they] may prepare a defense."  *Id.*

The State responds that this challenge is waived as it was not presented in the trial court, and Helms fails to satisfy the requirement of RAP 2.5(a)(3) to establish a manifest constitutional error that may be presented for the first time on appeal.  The State is correct.

We may refuse to review any claim of error which was not raised in the trial court.  RAP 2.5(a).  However, we may elect to take up an error for the first time on appeal if it is a manifest error affecting a constitutional right.  RAP 2.5(a)(3).  The appellant's task is to "'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'"  *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007)).  To rise to the level of a manifest error the appellant must show actual prejudice.  *State v. Kalebaugh*, 183 Wn.2d 578, 584,

355 P.3d 253 (2015). This requires a further showing that the "'asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 99).

Helms neither cites RAP 2.5(a)(3), nor attempts to satisfy the standard it requires. Similarly, and more critically, he fails to present authority or argument under the controlling standard of review for such a challenge. In order to demonstrate error on a claim of insufficiency of a charging instrument, the appellant must establish that the document failed to apprise the accused of an essential element of the crime alleged, thus violating their constitutional right to understand the accusation they face.

In *State v. Pry*, our Supreme Court addressed the two-step test for such analysis laid out in its earlier opinion, *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991), and explained that reviewing courts first determine whether the "necessary facts appear in any form, or by fair construction can they be found, on the face of the charging document." 194 Wn.2d 745, 752, 452 P.3d 536 (2019). We may consider any other allegations set out in this same charging instrument at this step of the test. *Id.* at 753. If the necessary facts *are* present, the court then considers whether the defendant was nonetheless prejudiced by the State's "inartful language that caused a lack of notice" and may review accompanying affidavits. *Id.* at 752-53. If, after de novo review, the appellate court concludes that the "necessary elements are not found or fairly implied, we presume prejudice and reverse without reaching the second prong and the question of prejudice." *Id.* at 753.

Helms cites none of this authority, nor does he address the language in the information the State filed in his case. "We do not consider conclusory arguments unsupported by citation to authority." *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012); RAP 10.3(a)(6). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). Instead, the entirety of his argument on this issue addresses the true focus of his appeal: his claim that the possession of a dangerous weapon statute is unconstitutional. Because Helms has neither carried his burden to demonstrate manifest constitutional error such that this unpreserved error could be reviewed on appeal, nor provided analysis or argument under the appropriate legal framework, we decline to consider this challenge further.

III.     Constitutionality of RCW 9.41.250(1)(a)

Woven into Helms' attack on the charging instrument is a request for this court to hold that knowledge is an essential element of the charge of possession of a dangerous weapon. RCW 9.41.250(1)(a) reads in part, "Every person who: [m]anufactures, sells, or disposes of or possesses any instrument or weapon of the kind usually known as . . . metal knuckles . . . is guilty of a gross misdemeanor." For this challenge, Helms analogizes to the mens rea required for the crime of possession of a controlled substance. Specifically, Helms seeks extension of the reasoning from *State v. Blake*,[1] arguing that offenses based on possession alone risk prosecution of "wholly innocent and passive nonconduct on a strict liability

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

basis." In response, the State again successfully argues a procedural barrier to our analysis of this assignment of error.

The State properly notes that we presume that statutes are constitutional. *State v. Zigan,* 166 Wn. App. 597, 603, 270 P.3d 625 (2012). When arguing a statute is unconstitutional, the challenger carries a "'heavy burden of establishing its unconstitutionality beyond a reasonable doubt.'" *State v. Haviland*, 186 Wn. App 214, 218, 345 P.3d 831 (2015) (quoting *Amalg. Transit Union Loc. 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2001)). The State correctly contends that to prevail on this claim, Helms must engage in statutory interpretation of RCW 9.41.250(1)(a) to determine whether our legislature meant for it to be a strict liability crime and then apply the factors set out in *State v. Bash*, 130 Wn.2d 594, 925 P.2d 978 (1996) (plurality opinion). The creation of strict liability offenses is a legislative balancing act as they are historically disfavored. In the past, an "'evil-meaning mind'" had to accompany "'an evil-doing hand,'" but the legislature has increasingly turned to strict liability to place "the burden of care on those in the best position to avoid those harms." *State v. Yishmael*, 195 Wn.2d 155, 163-64, 456 P.3d 1172 (2020) (quoting *Morisette v United States*, 342 U.S. 246, 251, 72 S. Ct. 240, 96 L. Ed. 288 (1952)). If "the State was improperly relieved of the burden of proving [the defendant] acted with knowledge . . . reversal would be required." *Id*. at 163. In *Yishmael,* our Supreme Court referenced the factors it had previously set out in *Bash* that are to be considered when determining if "the legislature intended to create strict liability offense." *Id.* at 166. Those considerations are as follows:

> (1) . . . the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) . . . the harshness of the penalty[;] . . . (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected.

*Bash,* 130 Wn.2d at 605-06 (quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986)). Because Helms fails to properly mount this challenge, we do not consider this assignment of error further.

IV.    Community Custody Conditions

Helms next contends that the trial court imposed two community custody conditions that are not crime-related and should therefore be stricken as exceeding the court's authority. We review de novo the statutory authority of the trial court to impose community custody conditions. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the trial court acted within its statutory authority, the imposition of sentencing conditions is reviewed for abuse of discretion. *State v. Smalley*, 25 Wn. App. 2d 254, 256, 522 P.3d 1037 (2023). "A court abuses its discretion if, when imposing a crime-related prohibition, it applies the wrong legal standard." *In re Pers. Restraint of Rainey*, 138 Wn.2d 367, 375, 229 P.3d 686 (2010).

The first challenged condition states that Helms "shall not possess or consume controlled substances . . . without a valid prescription" during his term of

community custody. However, it appears that Helms has misread RCW 9.94A.703. He contends the prohibition on controlled substances was imposed pursuant to RCW 9.94A.703(3)(f), which pertains to discretionary conditions that must be crime-related.[2] However, the condition restricting his possession and use of controlled substances without a prescription is authorized by RCW 9.94.703(2)(c), which reads, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." This community custody condition is waivable by the trial court, but will be imposed if the trial court declines to do so. 9.94A.703(2)(c). Thus, because the statute that explicitly authorizes the imposition of this community custody condition does not require any relation to the crime of conviction, the trial court did not abuse its discretion when it imposed this condition.

The second condition Helms challenges requires that he "undergo an evaluation for treatment of anger management." The felony judgment and sentence (J&S) does not indicate the authority under which this community custody condition was imposed, nor did the judge offer any explanation at the sentencing hearing. Helms again claims that this condition is improper as it is not crime-related. However, RCW 9.94A.703(3) expressly grants a sentencing court discretion to order a defendant to "[p]articipate in crime-related treatment or counseling services," under subsection (c), or "[p]articipate in rehabilitative

---

[2] Interestingly, Helms does not challenge another condition the court imposed, deemed discretionary by RCW 9.94A.703(3)(e), that ordered him to refrain from possessing or consuming alcohol while on community custody.

programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community," under subsection (d). The jury verdict demonstrates that they found that Helms failed to prove that he acted in self-defense and, instead, credited Berezhnoy's claim that Helms attacked him unprovoked. On that factual basis, and with the clear discretion conferred by RCW 9.94A.703, Helms has failed to demonstrate that the trial court's imposition of the requirement to obtain an anger management evaluation constitutes an abuse of discretion.

V.    Legal Financial Obligations

Finally, Helms argues and the State concedes, that the court erred in imposing certain legal financial obligations (LFOs) despite its finding of indigency. At sentencing, the court expressly found Helms indigent, yet on the felony J&S, the judge imposed the then-mandatory $500 victim penalty assessment (VPA) and, on the misdemeanor J&S, ordered that Helms pay supervision fees to DOC and the collection cost of any unpaid LFOs. After Helms' sentencing on December 7, 2022, the legislature amended a number of statutes related to the imposition of LFOs on indigent defendants. *See* former RCWs 7.68.035(4) (2018), *amended by* LAWS OF 2023, ch. 449, § 1; 9.94A.703 (2021), *amended by* LAWS OF 2022, ch. 29, § 8; 10.82.090(1) (2018), *amended by* LAWS OF 2022, ch. 260, § 12. These statutory amendments apply to Helms because they became effective while his case was pending appeal. *State v. Ramirez*, 191 Wn.2d 732, 747-50, 426 P.3d 714 (2018). Accordingly, we accept the State's concession and remand for the trial court to strike the VPA and DOC supervision fees from Helms' J&Ss.

Affirmed in part, reversed in part, and remanded for the trial court to strike the LFOs.

_____
Hazelrigg, A.C.J.

WE CONCUR:

_____
Díaz, J.

_____
Dwyer, J.