80 P.3d 625 (2003)
STATE of Washington, Respondent,
v.
Jerry L. WARFIELD, Appellant.
No. 28911-3-II.
Court of Appeals of Washington, Division 2.
December 9, 2003.
As Amended January 21, 2004.
*626 Carol L. Case, Shelton, WA, for Respondent.
Patricia Anne Pethick, Attorney at Law, Tacoma, WA, for Appellant.

*627 PUBLISHED IN PART OPINION
BRIDGEWATER, J.
Jerry L. Warfield appeals his convictions for second degree unlawful possession of a firearm and possession of an unlawful firearm. He raises two primary issues as well as several pro se. First, he asks us to decide whether knowing possession is an element of the crime of possession of an unlawful firearm. We hold that it is, and because the information and jury instructions omitted the knowledge element, we reverse and dismiss that conviction without prejudice. Second, Warfield challenges the evidentiary sufficiency as to both convictions. We hold that sufficient evidence existed.
Warfield was assaulted late one evening in the bedroom of his apartment in Shelton, Washington. The police responded and Warfield was transported to a hospital. While there, Warfield orally consented to an investigation of his apartment.
During the investigation, Detective Thomas Adams saw a shotgun in the bedroom closet. The shotgun's barrel was less than 18 inches long. Knowing that Warfield was a convicted felon and, as such, could not legally possess a firearm, Detective Adams obtained a warrant and seized the shotgun.
The State charged Warfield with second degree unlawful possession of a firearm (RCW 9.41.040(1)(b)(i)) and possession of an unlawful firearm (RCW 9.41.190(1)). During trial, which was to a jury, Warfield asserted that he did not know that the firearm was in his bedroom closet. Trial evidence showed that, although he was the lessor, Warfield was not living at the apartment full time, and at least two other people may have been staying at the apartment. And at the time of the assault, five or six people were with Warfield at the apartment.
The "to convict" instruction for the unlawful firearm count, instruction 16, did not require a finding of knowing possession or control.[1] Instead, it stated the essential elements as mere possession or control of a short-barreled shotgun. The jury found Warfield guilty on the unlawful firearm and unlawful possession counts.

I.Strict Liability
RCW 9.41.190 makes it unlawful "for any person to ... have in possession or under control, any machine gun, short-barreled shotgun, or short-barreled rifle." RCW 9.41.190(1). Warfield contends that, to convict him under this statute, the State should have been required to prove beyond a reasonable doubt that he knowingly possessed the firearm.[2] The State responds that RCW 9.41.190 is a strict liability offense that contains no knowledge requirement.
State v. Anderson, 141 Wash.2d 357, 5 P.3d 1247 (2000), provides guidance. Anderson involved RCW 9.41.040, the statutory basis for Warfields unlawful possession charge, which makes it illegal for a person previously convicted of certain felonies to "own[ ], [have] in his or her possession, or [have] in his or her control any firearm." RCW 9.41.040(1)(b). The Supreme Court held that the legislature intended this statute to require proof beyond a reasonable doubt that the defendant knowingly possessed the firearm. *628 Anderson, 141 Wash.2d at 367, 5 P.3d 1247. Although Anderson did not discuss RCW 9.41.190 and is thus not directly controlling, the statute that it addressed was amended at the same time as the statute at issue here. See Laws of 1994, 1st Sp. Sess., ch. 7, 402, 420. Andersons analysis of legislative intent is therefore highly persuasive.
As with RCW 9.41.040, the relevant portion of RCW 9.41.190 does not state whether knowledge is an element of the crime. Our inquiry is to determine whether the legislature intended to create a strict liability crime when it enacted RCW 9.41.190 or, stated conversely, whether knowledge is an implied element.
Subject to due process limits, it is undoubtedly within the legislatures prerogative to create strict liability by declaring an offense but writing the mens rea element out of it. State v. Rivas, 126 Wash.2d 443, 452, 896 P.2d 57 (1995); Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957). But unless the legislature is clear on the point, we generally do not favor statutory constructions recognizing strict liability. Anderson, 141 Wash.2d at 363, 5 P.3d 1247.
Often, strict liability offenses are "[p]ublic welfare offenses," which are "regulatory in nature and often result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize.' "Anderson, 141 Wash.2d at 369, 5 P.3d 1247 (citing State v. Bash, 130 Wash.2d 594, 607, 925 P.2d 978 (1996) (quoting Morissette v. United States, 342 U.S. 246, 255-56, 72 S.Ct. 240, 96 L.Ed. 288 (1952))). Therefore, that an offense is a public welfare offense indicates that the legislature intended strict liability. Anderson, 141 Wash.2d at 370, 5 P.3d 1247 (Ireland, J., dissenting); see also Bash, 130 Wash.2d at 606-08, 925 P.2d 978.
Bearing these principles in mind, we first consider the statutes language and legislative history. See Bash, 130 Wash.2d at 605, 925 P.2d 978. The legislatures findings in its 1994 amendments to Chapter 9.41 RCW state that "the increasing violence in our society causes great concern for the immediate health and safety of our citizens." Laws of 1994, 1st Sp. Sess., ch. 7, 101. The legislature further found that "State efforts at reducing violence must include changes in criminal penalties, reducing the unlawful use of and access to firearms." Laws of 1994, 1st Sp. Sess., ch. 7, 101. And it concluded that "the problem of violence can be addressed with many of the same approaches that public health programs have used to control other problems such as infectious disease, tobacco use, and traffic fatalities." Laws of 1994, 1st Sp. Sess., ch. 7, 101.
The majority and dissent in Anderson, a five-four decision, debated the significance of the "public health" references in the legislatures findings. The dissent felt that they indicated a legislative intent to make all gun possession offenses public welfare and, therefore, strict liability offenses. Anderson, 141 Wash.2d at 370, 5 P.3d 1247. The majority felt, however, that the findings were "not conclusive on the issue of the Legislatures intent," though it believed that the findings tended to favor a knowledge requirement. Anderson, 141 Wash.2d at 362, 5 P.3d 1247. While the findings certainly contemplate a relationship between gun possession and other public welfare offenses, the relationship is simply not so unassailable that it acts as a suitable basis for decision here.
The United States Supreme Court has interpreted certain public welfare offenses to require, at the very least, knowledge that the offending activity is subject to regulation. The Court discussed the principle in Staples v. United States, 511 U.S. 600, 607, 114 S.Ct. 1793, 1798, 128 L.Ed.2d 608 (1994):
[t]ypically, our cases recognizing such offenses involve statutes that regulate potentially harmful or injurious items. In such situations, we have reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him in responsible relation to a public danger, [United States v. Dotterweich, 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943) ] he should be alerted to the probability of strict regulation, and we have assumed that in such cases Congress intended to place the burden on the defendant to ascertain at his peril whether [his *629 conduct] comes within the inhibition of the statute. [United States v. Balint, 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604 (1922) ] .... [n.3] By interpreting such public welfare offenses to require at least that the defendant know that he is dealing with some dangerous or deleterious substance, we have avoided construing criminal statutes to impose a rigorous form of strict liability.
Staples, 511 U.S. at 607, 114 S.Ct. 1793 (emphasis added and some internal citations omitted).
Although not directly controlling because this case turns on our legislature's intent rather than that of the United States Congress, the principle set forth is well-reasoned and just. It does not affect the legislative prerogative to fix the elements of the offenses created; it merely recognizes that a legislature desiring strict liability likely does not intend criminal sanction for those who do not know or have reason to know that they are engaging in conduct subject to regulation.
The gun possession offenses created at RCW 9.41.040 and .190 have, at least potentially, several levels or types of knowledge: knowledge of the possession, knowledge that the possession is illegal, and knowledge that the firearm is illegal. Well-reasoned precedent has interpreted RCW 9.41.040 as requiring that the defendant know the facts that make his conduct illegal, but he need not know the fact of the illegality. State v. Semakula, 88 Wash.App. 719, 726, 946 P.2d 795, review denied, 134 Wash.2d 1022, 958 P.2d 317 (1997); see also State v. Reed, 84 Wash.App. 379, 383, 928 P.2d 469 (1997). Absent clear legislative intent, the imposition of strict liability where an individual lacks knowledge or a reason to know that he possesses a prohibited item is overly and unfairly rigorous. This is precisely what Staples condemned.
We next consider the factors set forth in Bash, which aim to illuminate whether, absent an explicit mens rea element, the legislature intended a strict liability offense. They are,
(1)a statutes silence on a mental element is not dispositive of legislative intent; the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a `public welfare offense' created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) and the harshness of the penalty. Other considerations include: (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, even at the cost of convicting innocent-minded and blameless people; and (8) the number of prosecutions to be expected.
Bash, 130 Wash.2d at 605-06, 925 P.2d 978.[3]
As RCW 9.41.190 has no common law antecedent, the conventional mens rea element cannot directly control. Thus, the first Bash factor is of minimal relevance. And the second Bash factor is similarly inconclusive in the present context. As discussed above, although the findings certainly reference the public's health and safety, the link is not so strong that it conclusively establishes RCW 9.41.190 as a public welfare offense.
The third factor created a significant rift in Anderson. The majority felt it "clear" that, absent a knowledge element, "entirely innocent behavior would fall within the sweep of this statute." Anderson, 141 Wash.2d at 364, 5 P.3d 1247. The dissent disagreed, making three points: first, that strict liability under RCW 9.41.040 was justified because "felons do not lose their right to possess firearms accidentally;" second, that "any unfairness is ameliorated by the availability of unwitting possession as an affirmative defense;" and finally, that because all strict liability offenses criminalize some innocent conduct "at *630 least initially," the inclination to imply a knowledge requirement "whenever it becomes a possibility ... would be [to] forever frustrat[e] the Legislature's intent to impose strict liability." Anderson, 141 Wash.2d at 371, 5 P.3d 1247.
The dissent's first point is irrelevant in the present context. Contrary to its burden under RCW 9.41.040, the State need not establish a prior offense to prove the crime of possession of an unlawful firearm. Thus, we cannot justify strict liability under RCW 9.41.190 by the notion that offenders will necessarily be repeat offenders.
The dissent's second point is valid as far as it goes. See, e.g., State v. Cleppe, 96 Wash.2d 373, 380-81, 635 P.2d 435 (1981) (availability of unwitting possession defense is justification for imposing strict liability for crime of drug possession), cert. denied, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982). But because it addresses fairness in imposing strict liability, which does not illuminate the legislative intent, it is only minimally important in assessing whether the legislature intended a strict liability crime.
The dissent's third point paints with too broad a stroke. As discussed above, a legislature may establish different forms of strict liability; for instance, RCW 9.41.190 may support strict liability for offenders who did not know that the particular gun that they possessed was illegal. But liability on the scale that the State now advocates, where the offender may be nothing more than a mother driving her son's car to work, potentially implicates so much totally innocent conduct that it cannot be consistent with the legislative intent. This approach will not frustrate legislative efforts to create strict liability; it simply recognizes the tenuous relationship between the public's welfare and criminalizing unwitting possession.
Other strict liability statutes demonstrate a more acceptable implication of innocent conduct. For example, RCW 9.41.050, which creates a concealed weapons offense, requires proof that the offender concealed the weapon "on his or her person." RCW 9.41.050(1)(a). Finding strict liability, Division One determined that this statute did not implicate too much innocent conduct because of the low likelihood that an individual will have a weapon concealed on his person and not know it. City of Seattle v. Briggs, 109 Wash.App. 484, 38 P.3d 349 (2001), review denied, 146 Wash.2d 1018, 51 P.3d 86 (2002). The court concluded that the requirement that the offender have the weapon on his person "makes it far less likely [than in Anderson ] that a person could be convicted under this section without knowledge of his or her criminal conduct. Briggs, 109 Wash. App. at 492, 38 P.3d 349.
The statute now at issue stands in stark contrast to the concealed weapons statute in the amount of innocent conduct implicated. RCW 9.41.190 does not require that an unlawful firearm be on the defendant's person; mere possession or control will suffice. Without a knowing possession element, the offense would implicate a significant amount of innocent conduct, which is a result that the legislature likely did not intend. Therefore, we conclude, as did the Anderson majority, that the third Bash factor weighs against strict liability.
We next consider the harshness of the penalty. As in Anderson, the relevant offense is a class C felony, which has a maximum five-year prison term and $10,000 fine. RCW 9.41.190(4); RCW 9A.20.021(1)(c). Anderson held that the five-year prison term "is clearly a factor that weighs in favor of a holding that this offense is not one of strict liability." Anderson, 141 Wash.2d at 365, 5 P.3d 1247. The dissent disagreed. It cited State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923), which also involved a five-year maximum, for the proposition that "strict liability may be imposed where lengthy terms of imprisonment are involved." Anderson, 141 Wash.2d at 372, 5 P.3d 1247.
Clearly, reasonable minds may disagree as to what constitutes a "harsh" penalty. But regardless of one's definition of harsh, a five-year prison term is not inconsequential. Therefore, even though other strict liability offenses carry similar penalties, we follow Anderson's lead and conclude that the harshness of the penalty weighs against the strict liability that the State advocates.
*631 The fifth Bash factor requires that we consider the seriousness of harm to the public. Once again, Anderson's commentary is instructive. The majority noted, "[w]hile one can easily argue that there is danger to society if persons who have been convicted of certain crimes knowingly possess firearms, we fail to see how their unwitting possession of a firearm poses a significant danger to the public. Neither does the punishment of such persons further a goal of deterrence." Anderson, 141 Wash.2d at 365, 5 P.3d 1247. The point has equal force in the present context, as it is dubious to suggest that a person who does not know that he possesses a dangerous firearm represents a danger to the public because of that possession. And it is equally dubious that subjecting unwitting possessors to criminal sanction will deter would-be offenders from possessing illegal firearms. Thus, the fifth Bash factor also weighs against strict liability.
We refrain from commenting on the remaining Bash factors, as did the Anderson court. As to the sixth factor, the circumstances under which a person may unwittingly possess or control an illegal firearm are so varied that we cannot predict the ease with which that person could have ascertained his possession; and it is clearly too extreme a burden to require people to be on their guard against unlawful firearms. As to the seventh and eighth Bash factors, the parties have not addressed the difficulty of the States burden in proving knowledge, nor have they provided statistical analysis concerning the number of expected prosecutions if we find that RCW 9.41.190 creates a strict liability offense.
We conclude that the legislature did not intend to create a strict liability crime when it enacted RCW 9.41.190. More precisely, the defendant need not know that the firearm is illegal, but at a minimum, he must know that he possesses or controls the firearm. The State was therefore required to prove Warfield's knowledge beyond a reasonable doubt.

II. Remedy
In addition to its omission from the jury instructions, the knowledge element was not explicit in the information.[4] Therefore, Warfield urges us to dismiss the unlawful firearm count on grounds that the information lacked sufficient notice as to the nature of the charge against him. He recognizes, however, that such a dismissal would be without prejudice, and the State could recharge and retry him. See State v. Vangerpen, 125 Wash.2d 782, 791, 888 P.2d 1177 (1995); State v. Simon, 120 Wash.2d 196, 199, 840 P.2d 172 (1992).
The State suggests that remand for a new trial is the appropriate remedy. The State's logic is that, because Warfield challenges the information for the first time on appeal, we must construe the information liberally and in favor of its validity, and under such a construction, the State argues, the information adequately apprised Warfield of the knowledge element. State v. Kjorsvik, 117 Wash.2d 93, 105, 812 P.2d 86 (1991). Therefore, according to the State, the only error was the giving of instruction 16.
The State identifies the appropriate test for assessing charging documents challenged for the first time on appeal. But by its position that the unlawful firearm offense was strict liability, the State clearly intended that knowledge not be included as an element. Also, the State explicitly charged knowledge in the unlawful possession offense while omitting it from the unlawful firearm offense. Thus, the State made it patently clear to Warfield that knowledge was not an element of the offense.
Even under a liberal construction of the charging document, it would be unfair to hold that Warfield had adequate notice. We therefore dismiss count I without prejudice. See State v. Johnson, 119 Wash.2d 143, 829 P.2d 1078 (1992).

*632 III. Sufficiency of the Evidence
Warfield next claims that insufficient evidence existed on the unlawful possession and unlawful firearm counts. On both counts, Warfield confines his claim to the knowledge element.
We assess the sufficiency of the evidence as to both counts because of double jeopardy implications. The test that we employ asks whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Our analysis includes all evidence presented at trial. State v. Jackson, 82 Wash.App. 594, 608, 918 P.2d 945 (1996), review denied, 131 Wash.2d 1006, 932 P.2d 644 (1997). Knowledge may be inferred when the defendants conduct indicates the requisite knowledge as "a matter of logical probability." State v. Stearns, 61 Wash.App. 224, 228, 810 P.2d 41, review denied, 117 Wash.2d 1012, 816 P.2d 1225 (1991).
The jury had the following evidence to consider in determining whether Warfield knew that he possessed or controlled the firearm:[5]
1. Warfield leased the apartment in which the firearm was found.
2. Detective Adams found the firearm in the master bedroom's closet.
3. Five or six people, excluding Warfield, were in his apartment when Warfield was assaulted, none of whom testified at trial or were interviewed by officers.
4. Warfield's mother, also his apartment manager, testified that she was in the process of evicting Warfield when he was arrested because of all the people coming and going from his apartment and, on the night of her son's arrest, "[t]here would be like five or six people pounding on the door every fifteen to twenty minutes." 4 Report of Proceedings (RP) (Mar. 11, 2002) at 116.
5. Warfield's mother testified that she looked inside Warfield's closet on the day of his arrest and saw no shotgun; but she stated that the closet was cluttered and she "didn't dig through anything. 4 RP at 123.
6. Warfield's mother testified, however, that "[a]s far as I know that was the bedroom he occupied. Most of his stuff was in that room." 4 RP at 123.
7. Finally, Warfield testified that, at the time of his arrest, he was splitting time between the apartment and his girlfriend's residence in Elma, though he was not staying at the apartment "very much at all." He stated that he "would stop in maybe twice a week" and that he had two friends who "were there on a full time basis and two that were staying there off and on." 4 RP at 127.
From this evidence, a rational jury could conclude that Warfield knowingly possessed the firearm. Officers found the firearm in Warfield's bedroom closet, which was inside the apartment that Warfield leased and was currently, though possibly sporadically, residing at; and evidence shows that the bedroom and closet were filled with Warfield's personal effects. The State was not required to produce direct evidence of Warfield's knowledge. These circumstances sufficiently establish knowledge, and Warfield's sufficiency challenge therefore fails.
Affirmed as to count I; reversed and dismissed without prejudice as to count II.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered. Affirmed in part, reversed in part.
We concur: MORGAN, P.J., and SEINFELD, J.
NOTES
[1] Instruction 16 read, in relevant part,

[t]o convict the defendant of the crime of possession of an unlawful firearm as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 22nd day of September, 2001 the defendant had in his possession or under his control a short-barreled shotgun, to wit: a Glenfield Model 778-12 gauge shotgun, Serial No. A60603;
(2) That the acts occurred in the State of Washington.
Clerk's Papers (CP) at 39.
Instruction 13, the to convict instruction for the unlawful possession count, stated,
[t]o convict the defendant of the crime of unlawful possession of a firearm in the second degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 22nd of September, 2001, the defendant did knowingly own, knowingly control or knowingly have in his possession a firearm;
(2) That the defendant had previously been convicted of a felony; and
(3) That the acts occurred in the State of Washington.
CP at 36 (emphasis added).
[2] Warfield does not dispute any other statutory element.
[3] Bash adopted the first four factors from Staples, 511 U.S. at 615-19, 114 S.Ct. 1793. The remaining factors were noted in 1 WAYNE R. LAFAVE AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW 3.8, at 341-44 (1986). See Anderson, 141 Wash.2d at 363, n. 2, 5 P.3d 1247.
[4] The information alleged that "the Defendant JERRY L. WARFIELD, did commit POSSESSION OF AN UNLAWFUL FIREARM, a Class C felony, in that the Defendant did unlawfully have in his possession or under his control a short-barreled shotgun." CP at 45 (emphasis ours).
[5] The knowledge requirement is the same for both counts.