# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 76802-6-I |
| Respondent, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) PUBLISHED OPINION |
| NAZIYR YISHMAEL, | ) |
| | ) |
| Appellant. | ) FILED: November 26, 2018 |
| | ) |

BECKER, J. — Appellant Naziyr Yishmael, a nonlawyer, offered a program promoting the use of adverse possession to obtain ownership of houses. In exchange for a fee, Yishmael provided members with advice on adverse possession law, lists of houses in foreclosure, forms to use to make claims of abandonment by the owners, and other services. A jury convicted him of the unlawful practice of law. Affirming the conviction, we conclude the statute defining the crime is not void for vagueness, the instruction defining the practice of law was appropriately taken from a court rule, the practice of law by a nonlawyer is a strict liability offense, and the evidence was sufficient.

## FACTS

Before the real estate crash of the late 2000s, Yishmael worked as a realtor. After the downturn, he founded an association and recruited members by offering free seminars with PowerPoint presentations focusing on the legal doctrine of adverse possession. He encouraged members to believe that they

could legally enter vacant homes, claim them as their own, and secure legal title after 7 to 10 years of occupation.

Yishmael charged $7,000 to $8,000 for membership in his association. Members were entitled to receive his advice on adverse possession, including statutes and case law; listings of homes that were apparently abandoned or that had "foreclosure" issues; and legal forms to aid them in making claims of adverse possession. Yishmael promised to stand by and offer guidance if any legal difficulties should arise.

Yishmael was not a lawyer. The advice he provided to association members was largely erroneous, and the legal documents were effectively meaningless.

Yishmael was arrested in April 2016. The State charged him with one count of unlawful practice of law and several counts of theft, attempted theft, conspiracy to commit theft, and offering false instruments for filing or record.

During the course of Yishmael's five-day trial, the State presented the testimony of three former members of his association. When these individuals met Yishmael, they were struggling to pay their monthly rent. Swayed by Yishmael's explanation of adverse possession, they agreed to join his association. They worked out installment plans with Yishmael and began paying membership dues.

The three testified similarly about using a list provided by Yishmael to identify vacant homes they were interested in owning. Yishmael in some cases arranged to have a locksmith change the locks on the selected homes. The

members moved into the homes they had decided to possess. On Yishmael's advice, they posted "no trespassing" signs, filed documents with the recorder's office, and paid for landscaping, repairs, and new appliances. All three testified that they were visited by police officers. Two were arrested. One of them had been offered $1,000 to move out; Yishmael offered to draft a counter-offer for $3,000. Yishmael also advised him on how to deal with the criminal proceedings.

Yishmael's defense focused on challenging the theft charges. The facts supporting the charge of unlawful practice went largely uncontested. The jury convicted Yishmael of the unlawful practice of law and acquitted him on the other charges. He was given a sentence of 364 days in jail, suspended on condition that he spend five days in jail and report for 30 days of a community work program.

ANALYSIS

Vagueness

After the defense rested, Yishmael moved to dismiss the charge of unlawful practice of law on the grounds that the statute defining the crime is void for vagueness. Yishmael contends the trial court erred by denying this motion.

Whether a former, shorter version of RCW 2.48.180 was void for vagueness was considered in State v. Hunt, 75 Wn. App. 795, 801, 880 P.2d 96, review denied, 125 Wn.2d 1009, 889 P.2d 498 (1994). A statute violates Fourteenth Amendment due process protections if it fails to provide a fair warning of proscribed conduct. Hunt, 75 Wn. App. at 801. In analyzing whether a statute is unconstitutionally vague, courts presume that a statute is constitutional; the

3

burden is on the challenger to prove otherwise beyond a reasonable doubt. Hunt, 75 Wn. App. at 801. Whether a statute is constitutional is reviewed de novo. State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

Although some uncertainty is constitutionally permissible, a statute is unconstitutionally vague if (1) it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Hunt, 75 Wn. App. at 801; Spokane v. Douglass, 115 Wn.2d 171, 178-79, 795 P.2d 693 (1990).

The unlawful practice of law is a crime. A single violation is a gross misdemeanor. RCW 2.48.180(3)(a). RCW 2.48.180(2) has five subsections defining various ways in which the crime may be committed. The State charged Yishmael under the first subsection, which states that the unlawful practice of law occurs when a "nonlawyer practices law, or holds himself or herself out as entitled to practice law." RCW 2.48.180(2)(a).

The statute does not define the "practice of law." Yishmael argues that without a statutory definition of what it means to practice law, an average person cannot understand what conduct the statute proscribes and penalizes. But statutes are not read in a vacuum, nor is a statute void for vagueness "merely because some terms are not defined." State v. Harrington, 181 Wn. App. 805, 824, 333 P.3d 410, review denied, 181 Wn.2d 1016, 337 P.3d 326 (2014). When a criminal statute does not define words alleged to be unconstitutionally vague, "the reviewing court may 'look to existing law, ordinary usage, and the general

4

purpose of the statute' to determine whether 'the statute meets constitutional requirements of clarity.'" Hunt, 75 Wn. App. at 801, quoting State v. Russell, 69 Wn. App. 237, 245, 848 P.2d 743, review denied, 122 Wn.2d 1003, 859 P.2d 603 (1993).

Although it may be difficult to define the "practice of law" precisely, the term is not unconstitutionally vague when existing law and ordinary usage allow an ordinary person to know that RCW 2.48.180 proscribes a defendant's conduct. Hunt, 75 Wn. App. at 803. In Hunt, a man with no formal training referred to himself as a paralegal and provided legal services such as representing clients in negligence actions, conducting settlement negotiations, preparing legal documents and liens, and dispensing legal advice. Hunt, 75 Wn. App. at 797-98. Convicted of unlawful practice, he argued that the statutory phrase "practice law" was unconstitutionally vague. Hunt, 75 Wn. App. at 800. This court rejected his arguments, relying on a number of Washington cases defining the practice of law. Hunt, 75 Wn. App. at 802, citing In re Droker and Mulholland, 59 Wn.2d 707, 719, 370 P.2d 242 (1962); Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n, 91 Wn.2d 48, 54, 586 P.2d 870 (1978); Hecomovich v. Nielsen, 10 Wn. App. 563, 571, 518 P.2d 1081, review denied, 83 Wn.2d 1012 (1974); Hagan & Van Camp, P.S. v. Kassler Escrow, Inc., 96 Wn.2d 443, 446-47, 635 P.2d 730 (1981). The cited cases hold that preparing legal documents and providing legal advice constitute the practice of law. Hunt, 75 Wn. App. at 802. We concluded that the defendant's conduct was clearly proscribed by the definitions in these cases and he could not have

5

reasonably been surprised by the application of the statute to his activities. Hunt, 75 Wn. App. at 803-04.

In this case Yishmael provided legal advice, distributed purportedly necessary legal documents, gave instructions on how to record the legal documents, and sought to counsel the members of his association through any resulting legal troubles. Although Yishmael compares his behavior to that of teachers and newspaper reporters, his actions went beyond what ordinarily occurs when those professionals talk about law. Ordinary usage, court rules, and case law, including Hunt, were sufficient to warn Yishmael that his conduct constituted the practice of law.

Yishmael attempts to distinguish this case from Hunt by claiming that RCW 2.48.180 infringes upon his First Amendment rights. Because Yishmael's briefing on this point is inadequate to permit meaningful review, we do not consider it. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). We conclude that as applied to Yishmael's actions, RCW 2.48.180 was not impermissibly vague.

Use of GR 24 to Define the Practice of Law

At trial, the State called David Boerner to testify on the definition of "practicing law." Boerner is a professor emeritus at Seattle University. He contributed to the drafting of GR 24, the general rule defining the practice of law, as set forth by the Washington Supreme Court. The rule was adopted in 2001 and amended in 2002. Boerner testified that the practice of law is defined by GR 24. GR 24 was admitted as evidence. The relevant portion states the following:

> The practice of law is the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person(s) which require the knowledge and skill of a person trained in the law.  This includes but is not limited to:
>
> (1)  Giving advice or counsel to others as to their legal rights or the legal rights or responsibilities of others for fees or other consideration.
>
> (2)  Selection, drafting, or completion of legal documents or agreements which affect the legal rights of an entity or person(s).
>
> (3)  Representation of another entity or person(s) in a court, or in a formal administrative adjudicative proceeding or other formal dispute resolution process or in an administrative adjudicative proceeding in which legal pleadings are filed or a record is established as the basis for judicial review.
>
> (4)  Negotiation of legal rights or responsibilities on behalf of another entity or person(s).

GR 24(a).

The State proposed that GR 24 be used to define the practice of law in a jury instruction.  At the State's suggestion, and over Yishmael's objection, the trial court used GR 24 to formulate jury instruction 20:

> The "practice of law" means the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person(s) which requires the knowledge and skill of a person trained in law.  This includes giving advice or counsel to others as to their legal rights or the legal rights or responsibilities of others for fees or other consideration.   It also includes the selection, drafting, or completion of legal documents or agreements which affect the legal rights of an entity or person(s).

Yishmael argues that by including language from GR 24 in the jury instruction, the trial court effectively endorsed Boerner's testimony and thereby improperly commented on the evidence.

This court reviews jury instructions de novo, within the context of jury instructions as a whole.  State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).  A judge may not instruct a jury that matters of fact have been

established as a matter of law. Levy, 156 Wn.2d at 721. But a jury instruction that does no more than accurately state the law pertaining to an issue is not an impermissible comment on the evidence. State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015). Here, the disputed instruction provided an accurate definition of practicing law, as set forth by the Washington Supreme Court in GR 24. The fact that Boerner testified about GR 24 did not transform the instruction into a comment on the evidence.

Separation of Powers

For the first time on appeal, Yishmael argues that RCW 2.48.180 is unconstitutional under the separation of powers doctrine. His assignment of error reads as follows:

> The use of GR 24 to define an element of the crime of unlawful practice of law is an improper delegation of legislative authority to the judiciary and violates the separation of power doctrine.

This is an issue statement, not an assignment of error.

A party's assignments of error should include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." RAP 10.3(a)(4). Assignments of error enable the reviewing court to pinpoint the time and place in the record at which the trial court allegedly committed error. "Mistakes were made" is not a satisfactory assignment of error.

Yishmael's assignment of error raises the separation of powers doctrine as an abstract issue without specifying an error committed by the trial court. He might be challenging jury instruction 20, or he might be challenging the statute.

He alleges an improper delegation of legislative authority, but does not say who did the delegating. By not assigning error to a specific decision made by the trial court, Yishmael avoids acknowledging that he did not present the issue of separation of powers to the trial court for a decision. He also avoids the responsibility of explaining why he is entitled to raise the issue for the first time on appeal.

As a general rule, an appellate court will not consider an issue raised for the first time on appeal. RAP 2.5(a). There is an exception for manifest error affecting a constitutional right. RAP 2.5(a). "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error "'manifest,'" allowing appellate review." State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995), as amended (Sept. 13, 1995). Yishmael does not attempt to make this showing.

As a result of Yishmael's failure to make a proper assignment of error, his discussion of separation of powers is not susceptible to appellate review. The separation of powers issue is not properly before this court and we decline to address it.

Absence of Mens Rea Element

Of the five subsections defining the various ways the crime may be committed, three contain a knowledge element:

> (2) The following constitutes unlawful practice of law:
> (a) A nonlawyer practices law, or holds himself or herself out as entitled to practice law;

9

(b) A legal provider holds an investment or ownership interest in a business primarily engaged in the practice of law, *knowing* that a nonlawyer holds an investment or ownership interest in the business;
(c) A nonlawyer *knowingly* holds an investment or ownership interest in a business primarily engaged in the practice of law;
(d) A legal provider works for a business that is primarily engaged in the practice of law, *knowing* that a nonlawyer holds an investment or ownership interest in the business; or
(e) A nonlawyer shares legal fees with a legal provider.

RCW 2.48.180(2) (emphasis added). The first subsection, under which Yishmael was charged, does not specify a required mens rea. RCW 2.48.180(2)(a).

Yishmael proposed a jury instruction requiring the State to prove that he "knowingly" practiced law. The trial court ruled that the word "knowingly" would not be used in the instruction because it was not used in RCW 2.48.180(2)(a). Yishmael contends the trial court erred by rejecting his proposed instruction.

Whether a mental element is an essential element of a crime is a matter to be determined by the legislature. Criminal offenses with no mens rea are generally disfavored. State v. Bash, 130 Wn.2d 594, 606, 925 P.2d 978 (1996). Bash sets forth eight factors for consideration by a court when determining whether an offense without a specified mens rea was intended by the legislature as a strict liability crime:

(1) a statute's silence on a mental element is not dispositive of legislative intent; the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) and the harshness of the penalty. Other considerations include: (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it

10

important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected.

Bash, 130 Wn.2d at 605-06, quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986).

To find legislative intent to impose strict liability, it is not necessary that all Bash factors are aligned. See State v. Burch, 197 Wn. App. 382, 399, 389 P.3d 685 (2016), review denied, 188 Wn.2d 1006, 393 P.3d 356 (2017) (concluding that vehicular homicide under the influence of alcohol or drugs is a strict liability offense even though the Bash factors do not all point in that direction).

With respect to the unlawful practice of law as charged against Yishmael, neither party identifies guidance found in the common law. This first Bash factor does not favor or disfavor strict liability.

The second Bash factor looks at whether the crime is a public welfare offense. Public welfare offenses, regulatory in nature, are often upheld as strict liability crimes. Bash, 130 Wn.2d at 607. They typically share certain characteristics:

> (1) they regulate "dangerous or deleterious devices or products or obnoxious waste materials;" (2) they "heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare;" and (3) they depend on no mental element but consist only of forbidden acts or omissions.". . .

> Public welfare statutes render criminal "a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." Thus, under such statutes, "a defendant can be convicted even though he was unaware of the circumstances of his conduct that made it illegal."

11

Staples v. United States, 511 U.S. 600, 628-29, 114 S. Ct. 1793, 1809, 128 L. Ed. 2d 608 (1994) (citations omitted). "Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize." Morissette v. United States, 342 U.S. 246, 255-56, 72 S. Ct. 240, 96 L. Ed. 288 (1952).

Case law and commentary indicate that RCW 2.48.180(2)(a) is a public welfare offense. "The unauthorized practice of law is prohibited to protect the public." Hunt, 75 Wn. App. at 803. "Defining 'the practice of law' lies at the heart of any effort to protect the public from untrained and unregulated persons who hold themselves out as able to offer advice and counsel in matters customarily performed by lawyers." 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE GR 24 drafters' cmt. at 105 (8th ed. 2014). We conclude RCW 2.48.180(2)(a) is a public welfare offense. This factor weighs in favor of strict liability.

The third factor considers whether strict liability would encompass seemingly innocent conduct. Yishmael argues that the lack of a mens rea element exposes professionals such as teachers and realtors to liability, but he does not explain how their normal professional conduct would come within the definition of practicing law. In addition, RCW 2.48.180(7) provides an affirmative defense for conduct authorized by a professional license:

> In a proceeding under this section it is a defense if proven by the defendant by a preponderance of the evidence that, at the time of the offense, the conduct alleged was authorized by the rules of professional conduct or the admission to practice rules, or Washington business and professions licensing statutes or rules.

12

Providing an affirmative defense ameliorates the harshness of a strict liability crime. State v. Deer, 175 Wn.2d 725, 735, 287 P.3d 539 (2012), cert. denied, 568 U.S. 1148, 133 S. Ct. 991, 184 L. Ed. 2d 770 (2013). The third factor weighs in favor of strict liability.

The harshness of the penalty is the fourth factor. "'Other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault.'" Bash, 130 Wn.2d at 608-09, quoting 1 LAFAVE & SCOTT § 3.8, at 343. There is no bright line rule for when a punishment is severe enough to weigh against strict liability, but courts have hinted that punishing an offense as a felony is incompatible with strict liability. Bash, 130 Wn.2d at 609. In this case, a single violation is a gross misdemeanor. It is true that subsequent violations are punishable as Class C felonies under RCW 2.48.180(3)(b), but if there are subsequent violations, the offender has already learned from the first prosecution that the unauthorized practice of law is a criminal offense. This fourth factor weighs in favor of strict liability.

The fifth factor looks at the seriousness of harm to the public. The potential harm of the unlawful practice of law is significant. The drafters' comments to GR 24 state that the "public has no recourse for poor, illegal, or negligent performance" of legal services by a nonlawyer. 2 TEGLAND, supra, at 105. Yishmael's "clients" were in some cases arrested, all were exposed to potential felony charges as a result of following his advice, and the rightful

13

owners of properties selected for the scheme experienced property losses and criminal trespass. This factor weighs in favor of strict liability.

The sixth factor is the ease or difficulty of the defendant ascertaining the true facts. GR 24 is a publicly available court rule defining the practice of law. It would not have been difficult for Yishmael to read it and learn that the services he was offering constituted the practice of law. This factor weighs in favor of strict liability.

Yishmael testified that he did read RCW 2.48.180 before beginning his adverse possession program and concluded that what he planned to do would not violate the statute. He said he understood that practicing law was "assisting someone with court documents and representing them in court." He now argues that the State should be required to prove he knew his services constituted the practice of law. This argument illustrates the significance of the seventh factor, which considers the difficulty of proving intent. In the face of Yishmael's testimony that he subjectively interpreted the statute as not being a bar to his conduct, it would have been difficult for the State to prove that he practiced law knowingly. See State v. Mertens, 148 Wn.2d 820, 830, 64 P.3d 633 (2003) (commercial fishing without a license is a strict liability crime; if proof of intent were required, a defendant could easily evade conviction by claiming noncommercial intent, thereby circumventing personal daily limits and potentially placing undue pressure on natural resources). The seventh factor weighs in favor of strict liability.

The final factor looks at the number of prosecutions. There are few appellate opinions on the criminal prosecution of unlawful practice of law. It is reasonable to infer that criminal prosecutions for this offense are rare. This factor weighs in favor of strict liability.

Taken together, the Bash factors support the conclusion that the legislature intended a nonlawyer's practice of law to be a strict liability crime. The legislature's decision to use the words "knowing" and "knowingly" in subsections (b), (c), and (d) of RCW 2.48.180(2), but not in subsection (a), is further evidence of that intent. See Mertens, 148 Wn.2d at 826 (statute listed five alternative means, only one of which contained a mens rea element, the other four were strict liability crimes). "When drafting a statute, if the Legislature uses specific language in one instance and dissimilar language in another, a difference in legislative intent may be inferred." Matter of Sietz, 124 Wn.2d 645, 651, 880 P.2d 34 (1994). Had the legislature intended to limit punishment to nonlawyers who *knowingly* practice law, the legislature clearly would have done so.

We conclude that the practice of law by a nonlawyer is a strict liability offense. The trial court properly refused Yishmael's request to require the State to prove that he "knowingly" practiced law.

Sufficiency of the Evidence

Yishmael challenges the sufficiency of the evidence underlying his conviction. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, a rational trier

of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Yishmael was charged under the first subsection of the relevant statute, which states that the unlawful practice of law occurs in two circumstances: when a nonlawyer practices law, or when a nonlawyer holds himself or herself out as entitled to practice law. RCW 2.48.180(2)(a). Yishmael emphasizes that he did not hold himself out to be an attorney.

Although the information originally charged Yishmael both with practicing law and with holding himself out as a lawyer, the trial court granted Yishmael's motion to dismiss the holding out charge. The court did not include it in the jury instructions and ordered the parties not to argue about whether Yishmael held himself out as a lawyer. Thus, Yishmael was convicted only for practicing law as a nonlawyer. The evidence was sufficient to support that conviction.

## STATEMENT OF ADDITIONAL GROUNDS

In a statement of additional grounds, Yishmael argues that RCW 2.48.180(1)'s definition of nonlawyer is confusing. The statute defines nonlawyer as:

> "Nonlawyer" means a person to whom the Washington supreme court has granted a limited authorization to practice law but who practices law outside that authorization, *and* a person who is not an active member in good standing of the state bar, including persons who are disbarred or suspended from membership.

RCW 2.48.180(1)(b) (emphasis added). Yishmael claims the emphasized "and" is a qualifier to the overall definition, not a separate definition. This argument is inconsistent with this court's previous holding that the definition specifies two

16

categories of nonlawyers, not one. State v. Janda, 174 Wn. App. 229, 234, 298 P.3d 751 (2012), cert. denied, 571 U.S. 881, 134 S. Ct. 221, 187 L. Ed. 2d 144 (2013). Yishmael was convicted as a nonlawyer under a definition that a nonlawyer "means a person who is not an active member in good standing of the state bar." RCW 2.48.180(1)(b).

The conviction is affirmed.

Becker, J.

WE CONCUR:

Andrus, J.

Mann, ACJ.