IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81149-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEDRO BARRERA FLORES, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — In determining whether the crime of alien in possession of a firearm, RCW 9.41.171, is a strict liability offense, we consider the plain language and legislative history of the statute and "other relevant factors" provided by State v. Bash[1] while adhering to the principle that strict liability offenses are generally disfavored.

Because RCW 9.41.171 does not contain an explicit mental state element and its legislative history coupled with the relevant Bash factors weigh against the imposition of a strict liability offense, we conclude that "knowing possession" is an "implied" essential element of RCW 9.41.171.

Because the to convict instruction did not contain the "knowing possession" element, we reverse Pedro Barrera Flores' conviction for alien in possession of a firearm and remand for further proceedings consistent with this opinion.

---

[1] 130 Wn.2d 594, 925 P.2d 978 (1996).

FACTS

On November 11, 2018, Pedro Barrera Flores[2] started an altercation with his then-wife Dawn Barrera[3] and their nephew, who was staying with them. During the incident, Barrera Flores ordered Dawn to open a safe located in a closet off of the dining room. When Dawn refused, Barrera Flores reached behind the safe, pulled out an AK-47, and threatened to kill them. After Dawn and their nephew escaped, Dawn called 911.

When the responding officers arrived, Barrera Flores was asleep. The officers searched the residence and found a "rifle . . . located behind the safe" and "some handguns" and ammunition inside the safe.[4] The State charged Barrera Flores with second degree assault, harassment, and alien in possession of a firearm.

At trial, Dawn, the responding officers, and an officer from Immigration and Customs Enforcement (ICE) testified. The ICE officer stated that Barrera Flores was undocumented and ineligible for a firearms license.

At the conclusion of the trial, the court provided the jury with instructions on the charged offenses.[5]

The court's instruction on alien in possession of a firearm provided:

---

[2] We use "Pedro Barrera Flores," the same as it appears in his brief on appeal, without a hyphen.

[3] We refer to Dawn Barrera by her first name for clarity.

[4] Report of Proceedings (RP) (Feb. 11, 2020) at 197, 213.

[5] Barrera Flores requested and was granted an instruction on fourth degree assault.

[T]o convict the defendant of the crime of alien in possession of a firearm as charged in Count III each of the following elements of the crime must be proved beyond a reasonable doubt: One that on or about November 11, 2018, the defendant was in possession of a firearm. Two, that the defendant was not a citizen of the United States. Three, that the defendant was not a lawful permanent resident of the United States. Four, that the defendant had not obtained a valid alien firearm license. Five, that the defendant, A, did not have a valid passport or Visa showing he's in the country legally. B, was not approved for temporary importation of firearms and ammunition. C, did not possess a valid hunting license issued by any state or territory of the United States. Or D, did not possess an invitation to participate in a trade show or sports shooting event. Six, that the possession of the firearm occurred in the state of Washington.[6]

A jury convicted Barrera Flores of fourth degree assault and alien in possession of a firearm.

Barrera Flores appeals his conviction for alien in possession of a firearm.

ANALYSIS

Barrera Flores contends that the trial court erred in failing to instruct the jury that knowing possession was implicitly required to convict him of alien in possession of a firearm. We review questions of statutory interpretation de novo.[7] "The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose."[8]

Alien in possession of a firearm, RCW 9.41.171, provides:

---

[6] RP (Feb. 12, 2020) at 331.

[7] State v. Williams, 158 Wn.2d 904, 908, 148 P.3d 993 (2006) (citing Am. Cont'l Ins. Co. v. Steen, 151 Wn.2d 512, 518, 91 P.3d 864 (2004)).

[8] Id. (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

> It is a class C felony for any person who is not a citizen of the United States to carry or possess any firearm, unless the person: (1) Is a lawful permanent resident; (2) has obtained a valid alien firearm license pursuant to RCW 9.41.173; or (3) meets the requirements of RCW 9.41.175.[9]

The question before this court, whether alien in possession of a firearm is a strict liability offense, is an issue of first impression. We begin "with a review of the language of the statute and any legislative history."[10]

RCW 9.41.171 does not contain an explicit mental state element.[11] The legislature adopted section .171 in 2009 and since its adoption there have been no amendments nor any legislative history addressing whether the legislature intended to create a strict liability offense. But as our Supreme Court noted in State v. Anderson regarding second degree unlawful possession of a firearm, "[the legislature's] additional failure to provide in the statute for the affirmative defense of unwitting conduct or to expressly eliminate lack of knowledge as a defense are . . . other indicators of its intent to make knowledge an element of the offense."[12] The legislature did not provide for the affirmative defense of unwitting conduct nor expressly eliminate lack of knowledge as a defense to alien in possession of a firearm. Although

---

[9] RCW 9.41.171.

[10] State v. Anderson, 141 Wn.2d 357, 361, 5 P.3d 1247 (2000) (citing Bash, 130 Wn.2d at 605).

[11] A statute's "failure to be explicit regarding a mental element is not, however, dispositive of legislative intent." Id.

[12] 141 Wn.2d 357, 362-63, 5 P.3d 1247 (2000).

4

the legislative history tends to favor the conclusion that RCW 9.41.171 is not a strict liability offense, it is not dispositive.

Because neither the plain language nor the legislative history of section .171 is conclusive, we consider the "other relevant factors" our Supreme Court adopted in Bash "as aids in determining whether the legislature has created a strict liability crime."[13]

The factors provide:

> (1) . . . [T]he statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a 'public welfare offense' created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) . . . the harshness of the penalty[;] (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, 'even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected.[14]

---

[13] Id. at 363 (citing Bash, 130 Wn.2d at 605-06). The State contends that because the legislature included an implicit knowledge element in firearm statutes within chapter 9.41 before RCW 9.41.171 was adopted, the legislature intended section .171 to be a strict liability offense. But even though the legislature is entitled to enact strict liability offenses, "courts will read mental states into criminal legislation if they believe the legislature intended a mental state." State v. Pickman, 2 Wn. App. 2d 411, 415, 409 P.3d 1103 (2018) (citing Bash, 130 Wn.2d at 605-07). Because the absence of a mental state element is not determinative of legislative intent, the State's argument is not compelling.

[14] Bash, 130 Wn.2d at 605-06 (citing 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986)).

"All of these factors are to be read in light of the principle that offenses with no mental element are generally disfavored."[15]

First, "we consider the statute 'in light of the background rules of common law.'"[16] But there is no common law "antecedent" for RCW 9.41.171 and therefore "the conventional mens rea element cannot directly control."[17] This factor is unhelpful.

Second, we consider whether RCW 9.41.171 is a public welfare offense.[18] Public welfare offenses tend to be "regulatory" and often involve "'pure food and drugs, labeling, weights and measures, building, plumbing and electrical codes, fire protection, air and water pollution, sanitation, highway safety and numerous other areas.'"[19]

Here, RCW 9.41.171 is not a public welfare offense because it is not regulatory. And although the purpose of the statute at least in part is to protect "the public's health and safety, the link is not so strong that it conclusively

---

[15] Anderson, 141 Wn.2d at 363 (citing id. at 606).

[16] State v. Christian, No. 80045-1-I, slip op. at 26 (Wash. Ct. App. July 6, 2021), http://www.courts.wa.gov/opinions/pdf/800451%20orderandopin.pdf (quoting Bash, 130 Wn.2d at 605).

[17] State v. Warfield, 119 Wn. App. 871, 879, 80 P.3d 625 (2003) (holding that because "RCW 9.41.190 has no common law antecedent . . . the first Bash factor is of minimal relevance.").

[18] Christian, slip op. at 27 (citing Bash, 130 Wn.2d at 605).

[19] Id. (citing Bash, 130 Wn.2d at 607).

establishes" section .171 as a public welfare offense.[20] This factor does not support strict liability.[21]

Third, we consider "'the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct.'"[22] "[F]irearms are potentially dangerous items . . . [but] a statute will not be deemed to be one of strict liability where such construction would criminalize a broad range of apparently innocent behavior."[23] Possession can be either actual or constructive.[24] A person has actual possession of an object if the object is in the "personal custody of the person charged with possession" whereas a person is in constructive possession if the person has "dominion and control" over the object.[25] Mere proximity to an object is insufficient to establish constructive possession.[26]

But unwittingly having a firearm located close enough to a person who could reduce it to their control is sufficient to establish constructive

---

[20] Warfield, 119 Wn. App. at 879 (holding knowledge is an implied element of possession of an unlawful firearm); Williams, 158 Wn.2d at 910 (confirming knowledge is an implied element of possession of an unlawful firearm).

[21] Williams, 158 Wn.2d at 911 (quoting Warfield, 119 Wn. App. at 879).

[22] Christian, slip op. at 29 (quoting Bash, 130 Wn.2d at 605).

[23] State v. Anderson, 141 Wn.2d 357, 364, 5 P.3d 1247 (2000).

[24] State v. Staley, 123 Wn.2d 794, 798, 872 P.2d 502 (1994).

[25] Id. (quoting State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)).

[26] Id. at 800-01.

possession.[27]  In <u>Anderson</u>, our Supreme Court held that "knowing possession" is an "implied" essential element of second degree unlawful possession of a firearm.[28]  The court noted that otherwise, "entirely innocent conduct may fall within the net cast by the statute in question."[29]  Similarly, in <u>State v. Williams</u>, our Supreme Court held that "knowing possession" is an "implied" essential element of possession of an unlawful firearm.[30]  The court was concerned "that possessing a firearm can be innocent conduct. . . . If strict liability is imposed, a person could innocently come into possession of a shotgun, rifle, or weapon meeting the definition of a machine gun but then be subject to imprisonment, despite ignorance of the gun's characteristics."[31] And in <u>State v. Warfield</u>, in regard to the crime of possession of an unlawful firearm this court noted, "RCW 9.41.190 does not require that an unlawful firearm be on the defendant's person; mere possession or control will suffice. Without a knowing possession element, the offense would implicate a significant amount of innocent conduct, which is a result that the legislature likely did not intend."[32]

---

[27] <u>State v. Jones</u>, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002); <u>State v. Listoe</u>, 15 Wn. App. 2d 308, 326-27, 475 P.3d 534 (2020).

[28] 141 Wn.2d at 365-66.

[29] <u>Id.</u> at 366.

[30] 158 Wn.2d 904, 914-15, 148 P.3d 993 (2006).

[31] <u>Id.</u> at 913-14.

[32] 199 Wn. App. 871, 881, 80 P.3d 625 (2003).

Therefore, consistent with <u>Anderson</u>, <u>Williams</u>, and <u>Warfield</u>, strict liability for alien in possession of a firearm would encompass innocent conduct because a noncitizen could be in constructive possession of a firearm in a vehicle or a residence with no knowledge of its presence. Strict liability would potentially impose criminal penalties on noncitizens whose ignorance of the existence of a firearm where they are physically located makes their actions innocent.[33] This factor weighs against strict liability.

Fourth, "'we consider the harshness of the penalty.'"[34] A class C felony is punishable by a five year maximum term and/or up to a $10,000 fine.[35] In <u>Anderson</u>, our Supreme Court held that a five year maximum term "is clearly a factor that weighs in favor of holding that this offense is not one of strict liability."[36] However, "courts have found that an offense that is a gross misdemeanor [punishable by up to 364 days in jail] weighs in favor of concluding it is a strict liability offense."[37]

Here, RCW 9.41.171 is a class C felony with a five year maximum. But section .171 is also an unranked felony, and the standard range for unranked

---

[33] <u>Williams</u>, 158 Wn. 2d at 912.

[34] <u>Christian</u>, slip op. at 31 (internal quotation marks omitted) (citing <u>Bash</u>, 130 Wn.2d at 605).

[35] <u>Anderson</u>, 141 Wn.2d at 372.

[36] <u>Id.</u> at 365.

[37] <u>Christian</u>, slip op. at 31.

felonies is limited to 12 months' incarceration.[38]  This factor has limited significance.

Fifth, we consider "'the seriousness of the harm to the public.'"[39] "'Other things being equal, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault, and vice versa.'"[40]  "However, that firearms may be dangerous must be considered along with the fact that it is lawful to own many of them."[41]

While firearms contribute to "increasing violence in society," in Anderson, our Supreme Court noted that a person's "unwitting possession of a firearm poses [no] significant danger to the public."[42]  The State fails to provide an adequate explanation for why a noncitizen's unwitting possession presents a greater risk to the public than a citizen's.  This factor weighs against strict liability.

The remaining Bash factors are not particularly helpful here. Specifically, sixth, we consider the ease or difficulty for the defendant in ascertaining the true facts of his alleged offense.[43]  If alien in possession of a firearm was a strict liability crime, it appears the noncitizen would have to

---

[38] State v. Steen, 155 Wn. App. 243, 249, 228 P.3d 1285 (2010).

[39] Christian, slip op. at 32 (citing Bash, 130 Wn.2d at 605).

[40] Bash, 130 Wn.2d at 610 (quoting 1 LaFave & Scott § 3.8, at 343).

[41] Williams, 158 Wn.2d at 914.

[42] Anderson, 141 Wn.2d at 365.

[43] Christian, slip op. at 35 (citing Bash, 130 Wn.2d at 605).

inspect every person, place, or vehicle they come into contact with to ensure they do not unwittingly come into possession of a firearm, making it somewhat difficult for the noncitizen to ascertain the true facts surrounding his alleged unlawful conduct.

Seventh, "we consider whether [the imposition of strict liability] would be 'relieving the prosecution of difficult and time-consuming proof of fault.'"[44] "Courts have found this factor to weigh in favor of strict liability when defendants could easily claim another reason for their conduct."[45] But if a noncitizen is unwittingly in constructive possession of a firearm, there does not appear to be an "easy" alternative explanation. And because knowledge "can be inferred from circumstantial evidence," the addition of an implied knowledge requirement would not appear to hinder prosecution.[46]

Finally, "we consider 'the number of prosecutions to be expected.'"[47] Courts have viewed the impact of future prosecutions differently.[48] Specifically, as this court noted in State v. Christian, "Recently, courts address this factor by looking at the number of appellate cases [and if] it is 'reasonable to infer that criminal prosecutions for this offense are rare,'" that fact weighs in

---

[44] Id. (quoting Bash, 130 Wn.2d at 606).

[45] Id.

[46] Williams, 158 Wn.2d at 915 (citing Staples v. United States, 511 U.S. 600, n.11, 114 S. Ct. 1793, 128 L.Ed.2d 608 (1994)).

[47] Christian, slip op. at 37 (quoting Bash, 130 Wn.2d at 606).

[48] Williams, 158 Wn.2d at 915 (citing Anderson, 141 Wn.2d at 365).

favor of strict liability.[49]   But this court in Christian also recognized that our

Supreme Court in State v. Yishmael "came to the opposite conclusion: [the

court held] '[t]he fewer the expected prosecutions, the more likely the

legislature meant to require the prosecuting officials to go into the issue of

fault.'"[50]   RCW 9.41.171 appears to be rarely charged, but we are not

convinced that has any significant impact in this setting.

Taken together, the Bash factors that weigh in favor of an implied

knowledge requirement, the legislative history, and the proposition that strict

liability crimes are generally disfavored support our conclusion that implied

"knowing possession" is an essential element of RCW 9.41.171.

The State concedes that the trial court's error was not harmless.[51]   We

accept the concession.

Because the State failed to establish, knowing possession, as an

essential element of section .171, reversal is required.   But because the

evidence presented at trial, namely the victim's testimony,[52] was sufficient for

---

[49] No. 80045-1-I, slip op. at 38 (Wash. Ct. App. July 6, 2021),
http://www.courts.wa.gov/opinions/pdf/800451%20orderandopin.pdf (quoting State
v. Yishmael, 6 Wn. App. 2d 203, 220, 430 P.3d 279 (2018)).

[50] Christian, slip op. at 38 (internal quotation marks omitted) (quoting State
v. Yishmael, 195 Wn.2d 155, 171-72, 456 P.3d 1172 (2020)).

[51] At trial, Barrera Flores did not concede to the facts presented by the
State supporting their position that RCW 9.41.171 is a strict liability offense.

[52] Dawn testified that at one point during the altercation, Barrera Flores
reached behind the safe and "pulled [an] AK-47."   RP (Feb. 11, 2020) at 231.
Dawn also stated that she was unaware there were any weapons located outside
the safe.

a reasonable person to conclude that Barrera Flores knowingly possessed a firearm, the State can retry Barrera Flores on alien in possession of a firearm without violating double jeopardy.[53]

Therefore, we reverse and remand for further proceedings consistent with this opinion.

WE CONCUR:

---

[53] State v. Fuller, 185 Wn.2d 30, 36, 367 P.3d 1057 (2016) ("For double jeopardy purposes, a reversal for insufficient evidence is equivalent to an acquittal 'because it means no rational factfinder could have voted to convict' on the evidence presented.") (citing State v. Wright, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009)); State v. Kirwin, 166 Wn. App. 659, 669, 271 P.3d 310 (2012) (Where the State presents substantial evidence of the charged crime, but the jury instructions omit an essential element, "the remedy is a new trial"; the defendant can "be entitled to a new trial even in the face of substantial evidence of her guilt of the crime charged, because a properly-instructed jury might nonetheless have found her not guilty.").